FILED
United States Court of Appeals
Tenth Circuit

May 23, 2016

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LEONARD E. LOPEZ,

      Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

      Defendant - Appellee.

No. 15-1169

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:12-CV-02259-RPM)**

Benjamin I. Sachs (Jim Leventhal with him on the briefs), of Leventhal & Puga, P.C., Denver, Colorado, for Plaintiff-Appellant.

Robert Mark Russel, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the brief), Denver, Colorado, for Defendant-Appellee.

Before **BRISCOE, McKAY** and **BALDOCK**, Circuit Judges.

**BRISCOE**, Circuit Judge.

      Plaintiff Leonard Lopez appeals following a bench trial on his medical

negligence claims. Lopez underwent lower back surgery at the Veterans

Administration Medical Center of Denver, Colorado (VA Hospital), in order to alleviate longstanding sciatic pain. Immediately following surgery, however, Lopez began experiencing excruciating pain in his left foot. Lopez has since been diagnosed with neuropathic pain syndrome and has to rely on a combination of prescription pain medicine and a surgically-placed peripheral nerve stimulator to deal with the pain.

Lopez filed suit against the United States pursuant to the Federal Tort Claims Act alleging, in pertinent part, that (1) Dr. Samuel Waller was negligent in performing the surgery, and (2) that the hospital was negligent in credentialing and privileging Dr. Glenn Kindt, the supervising physician involved in the surgery. The case proceeded to a bench trial, and at the conclusion of the trial the district court found in favor of the government on both claims. Lopez now appeals. Exercising appellate jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's judgment in favor of the United States on Lopez's claim of medical negligence involving Waller, but reverse the district court's judgment on the negligent credentialing and privileging claim and remand with directions to dismiss that claim for lack of jurisdiction.

I

*Factual background*

Lopez, a resident of Pueblo, Colorado, served as a military policeman and was stationed with the National Guard in Iraq between 1989 and 1991. While on

2

duty in Iraq, Lopez injured his lower back. After returning home and leaving the service, Lopez continued to have lower back pain. In particular, he suffered from intermittent sciatic pain on his left side that ran from his buttocks to his foot. Lopez also experienced a "pins and needles" sensation in his left foot from time to time. To relieve the symptoms, Lopez had to sit down and stretch out his leg.

In early 2010, Lopez met with Kindt, a neurosurgeon employed by the University of Colorado who had surgical privileges at the VA Hospital, but was not a federal employee. Kindt, who was approximately 79 years old at the time, told Lopez that he could surgically relieve Lopez's sciatic pain and symptoms. Kindt also allegedly told Lopez that he had performed thousands of similar surgeries without issue.

On March 5, 2010, Lopez underwent a surgical decompression of the lumbosacral nerve root and disc excision at L5-S1. The surgery was performed at the VA Hospital by Kindt, who was assisted by Waller, a second-year surgical resident at the VA Hospital. The goal of the surgery was to remove bulging disc material and thereby decompress the nerve root and alleviate the sciatic pain Lopez had been experiencing. During the course of the procedure, as Kindt was removing pieces of disc material with a surgical instrument called a Kerrison, Kindt pulled out a small piece of tissue approximately an inch in length that, according to Waller, "looked a little bit like a piece of angel hair pasta or something along those lines." App., Vol. 4 at 455. Kindt allegedly remarked to

3

Waller that the tissue "must be nerve" and expressed his intention to send the tissue to pathology for examination.[1]  Id.  According to Waller, "the tone of the operation changed a little bit" at that point and Kindt "started looking for [a] cerebrospinal fluid leak."  Id. at 455-56.  No such fluid was found by Kindt and Waller.  Consequently, Kindt completed the removal of the bulging disc material and, together, Kindt and Waller closed the incision.  Due to the concerns raised during the surgery, Kindt directed that Lopez lie flat overnight in order to prevent or reduce any symptoms that might arise from a possible cerebrospinal fluid leak.

When Lopez awoke following the surgery, he experienced a significant amount of pain in his left foot.  According to Lopez, the bottom of his left foot felt like "pins and needles," and he felt a severe burning sensation in the rest of his left foot.  Id., Vol. 3 at 399.  When asked by hospital staff to rate his pain on a scale of 1 to 10, with 10 being the worst, Lopez responded that his pain was a "20."  Id. at 396-97.  The pain in his left foot was so severe that Lopez could not put a sock or shoe on that foot.  Lopez was classified as having allodynia.[2]

---

[1] According to the evidence in the record, Kindt placed the piece of tissue in a cup along with multiple pieces of disc fragments.  Although the cup and its contents were sent to the pathology department, there is no evidence that Kindt or anyone else involved in the surgery notified the pathologist of the possibility of nerve tissue in the cup.  The resulting pathology report mentioned only the existence of disc tissue.

[2] Allodynia is commonly defined as "[p]ain from stimuli which are not normally painful."  Definition of Allodynia, MedicineNet.com, http://www.medicinenet.com/script/main/art.asp?articlekey=25197 (last visited on

(continued...)

Lopez was discharged from the VA Hospital with a prescription for pain medication. After using all of his available sick and annual leave, Lopez returned to his job as a government security guard. The pain in his left foot had not subsided, however, and Lopez eventually quit his job because he felt that he could not perform the tasks required of him. In particular, the pain in his left foot made it difficult for Lopez to walk.

Due to the continuing pain and his reliance on prescription medications, Lopez saw Dr. Giancarlo Barolat, a neurosurgeon with a private practice in Denver. Barolat diagnosed Lopez with "Neuropathic Pain Syndrome caused by damage to the L5 and S1 nerve roots" that occurred at some point during the surgery. Id., Vol. 6 at 836. To help alleviate some of the pain, Barolat surgically placed a peripheral nerve stimulator on the sciatic nerve in the back of Lopez's left thigh (the device is powered by a battery that was placed in the front of Lopez's left thigh). The stimulator helps to reduce Lopez's pain by fifty to sixty percent, lessens his dependence upon prescription painkillers, and increases his ability to function. That said, Lopez still relies on prescription painkillers to help deal with the pain in his left foot.

*Procedural background*

On August 24, 2012, Lopez filed a complaint in federal district court

_____

[2](...continued)
May 9, 2016).

against Kindt and Waller. The complaint alleged that Lopez was seeking relief under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq., and "ha[d] satisfied the jurisdictional prerequisite of 28 U.S.C. § 2675(a) by timely filing an administrative claim against the United States," which was denied on August 15, 2012. App., Vol. 1 at 13. The complaint further alleged that Kindt and Waller were both employees of the United States who were acting within the course and scope of their employment at the time of the events in question. More specifically, the complaint alleged that both Kindt and Waller performed each aspect of the operation on Lopez. The complaint in turn alleged claims for medical negligence arising from the conduct of both Kindt (Claim One) and Waller (Claim Two).

The United States filed an answer substituting itself as defendant in place of Waller and denying that Kindt was a federal employee. Kindt filed an answer on his own behalf also denying that he was an employee of the United States.[3] Kindt admitted that "he was the attending surgeon for the procedure being performed on . . . Lopez, and was assisted during this surgery by . . . Waller." Id. at 23. Kindt alleged "that during the removal of the disc material following the exposure and retraction of the dura and other surrounding tissue, a small piece of

_____

[3] It was ultimately determined that Kindt was not a federal employee, but rather an employee of the University of Colorado. Consequently, the district court exercised supplemental jurisdiction pursuant to 28 U.S.C. § 2671 over Lopez's negligence claim against Kindt. App, Vol. 9 at 1217.

nerve root was found to be contained within the disc material after it was removed by the surgeons, and that this aberrant anatomical finding was not visible or otherwise known to them prior to removal." Id.

On June 17, 2013, Lopez moved to amend his complaint "to add claims against the United States . . . for negligent credentialing and privileging related to . . . Kindt . . . at the [VA Hospital]." Id. at 63. In support, Lopez alleged that "Kindt's credentialing file produced by the United States in discovery reveal[ed] the [VA Hospital] failed to follow its own bylaws in failing to ensure . . . Kindt was competent to continue performing neurosurgical procedures." Id. at 64.

The district court granted Lopez leave to amend on July 11, 2013, and Lopez's first amended complaint was filed that same day. The first amended complaint alleged three claims for relief: Count One alleged a claim of medical negligence arising from the conduct of Kindt; Count Two alleged a claim of medical negligence arising from the conduct of Waller; and Count Three (misnamed in the first amended complaint as the "Fourth Claim") alleged a claim of negligent privileging and credentialing.[4] Id. at 110.

On August 12, 2013, Lopez and Kindt filed a joint stipulation dismissing all claims against Kindt with prejudice; this action was the result of a settlement between Lopez and Kindt. App., Vol. 2 at 148. This left two surviving claims:

---

[4] Lopez subsequently filed a second amended complaint revising his negligent privileging and credentialing claim. App., Vol. 2 at 196, 204-05.

7

the medical negligence claim arising from the conduct of Waller and the negligent credentialing and privileging claim relating to Kindt.

The case proceeded to a multi-day bench trial beginning on December 15, 2014. On March 6, 2015, the district court issued a written memorandum of decision concluding that Lopez "ha[d] failed to prove his claims by a preponderance of the evidence." App., Vol. 9 at 1237. In reaching this conclusion, the district court stated:

> The reasonable probability is that the angel hair pasta sized tissue that came out with disc material was one of the fibers that coalesce into the L-5 nerve root but was not in the nerve root itself. Removal of it was accidental given the patient's anatomy and it is not probable that it would have been seen and avoided even with greater illumination and magnification. The unfortunate outcome of this surgery has not been shown to be caused by a failure to perform this surgery within the standard of care expected of a neurosurgeon in 2010.

> Assuming that negligence has been shown, liability of the Government depends upon finding that the removal of nerve tissue was done by Dr. Waller. The testimony of Dr. Waller on this issue [i.e., that Dr. Kindt performed the surgery and removed the nerve tissue and that Dr. Waller simply assisted Dr. Kindt] is accepted as more credible than that of Dr. Kindt, who, in the end [of his deposition testimony] said he would accept what Dr. Waller said. The attempt to impeach Dr. Waller by suggesting medical reports showing him as the surgeon was not persuasive.

> The plaintiff has attempted to show that the VA should not have permitted Dr. Kindt to be the attending surgeon in this case. There has been post-trial briefing on the applicability of negligent credentialing as a claim under the FTCA. Assuming that there may be such liability, the evidence does not support that claim. This was not a complex surgical procedure and this Court is persuaded by the testimony of Dr. Brega [an associate professor of neurosurgery at the

8

University of Colorado] that Dr. Kindt was competent to perform it. The failure of the VA to follow proper protocol in 2009 does not establish a claim that Dr. Kindt was not competent to perform this type of surgery in 2010.

Id. at 1236.

Judgment in the case was entered on March 6, 2015. Lopez filed a postjudgment motion asking the district court to reconsider its conclusion that Lopez "failed to meet his burden of proving his claim involving the negligent removal of the L5 nerve root," and in turn asking the district court to "make additional findings, and award damages to [Lopez] on his negligent credentialing claim." Id. at 1317. The district court summarily denied Lopez's motion.

II

*The medical negligence claim arising from the conduct of Waller*

In his first issue on appeal, Lopez challenges the district court's resolution of his medical negligence claim arising from the conduct of Waller. Specifically, Lopez argues that the district court erred (a) in relying on the testimony of the government's expert witness, neurosurgeon Dr. Jeffrey Arle, regarding the precise cause of Lopez's injury, (b) in relying on Arle's testimony to reject Lopez's claim that Waller was negligent for failing to use a loupe (a small magnification device, essentially a microscope, that is worn on the head) or a headlight during the surgery, and (c) by making inadequate findings on Lopez's claim that Waller failed to properly mitigate the nerve injury suffered by Lopez. We agree with the

9

government, however, that these claims are moot.

Lopez's medical negligence claim arising from the conduct of Waller rested on the theory that it was Waller, a federal employee, who actually performed all or most of the surgery, under the supervision of Kindt, and damaged Lopez's nerve roots. Indeed, Lopez's counsel emphasized this issue during his opening statement to the district court: "One of the issues and the Court is well aware of this is who did the surgery. And so what we have is significant evidence, overwhelming evidence that the procedure was performed by Dr. Waller." App., Vol. 3 at 237. At the conclusion of the trial proceedings, the district court found in its written memorandum of decision that it was Kindt, who was not a federal employee, who actually performed the surgery and removed the nerve tissue. App., Vol. 9 at 1236. In making this finding, the district court stated that it found Waller's trial testimony on this issue "more credible" than the deposition testimony of Kindt. Id. On appeal, Lopez has not challenged as clearly erroneous the district court's finding on this fundamental point.[5] Consequently, it is unnecessary for us to address the other challenges that Lopez has mounted to the district court's resolution of his medical negligence claim pertaining to the conduct of Waller.

---

[5] Having carefully examined the record on appeal, we are doubtful that Lopez could establish that the district court's finding on this issue was clearly erroneous in any event.

*The negligent credentialing and privileging claim*

Lopez also challenges the district court's resolution of his negligent credentialing and privileging claim. The district court addressed and rejected this claim on the merits, and Lopez now argues that the district court erred in failing to grant relief on the claim. We agree with the government, however, that the district court lacked jurisdiction over the claim.

The administrative claim that Lopez filed with the government described the "Basis of Claim" in the following manner:

> This is a claim for medical malpractice arising from substandard medical care provided to Leonard Lopez during a surgical procedure on March 5, 2010 at the VA Medical Center. During the left L5-S1 decompression/discectomy procedure, Glenn W. Kindt, M.D., and Samuel Waller, M.D., cut and removed part of a nerve. Dr. Kindt's and Dr. Waller's cutting and removal of this nerve was a breach of the standard of care and caused Mr. Lopez injuries, damages and losses.
>
> As a result of Dr. Kindt's and Dr. Waller's cutting and removal of the nerve from Mr. Lopez's body, he developed permanent injuries including CRPS Type II and exacerbation of his post-traumatic stress disorder.

App., Vol. 1 at 78.

When Lopez sought to amend his complaint to include a claim for negligent credentialing and privileging, the government opposed that request, arguing that Lopez's administrative claim did not include such a claim. The district court rejected the government's argument, stating:

> It is apparent that counsel for the plaintiff had no information about

11

the competence of Dr. Kindt at the time of the filing of the administrative claim and first obtained that information through the discovery process in this civil action. The amendment does not present a new claim and is based on information known to the VA hospital and is well within the scope of the claim that the surgery was performed negligently causing damage to the plaintiff.

App., Vol. 2 at 124.

In its appellate response brief, the government argues that the district court erred in making this ruling and asserting jurisdiction over the negligent credentialing and privileging claim.[6] "Whether the district court has subject matter jurisdiction over a claim is a question of law we review de novo." Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d 840, 852 (10th Cir. 2005).

"The [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." United States v. Orleans, 425 U.S. 807, 813 (1976). "This unequivocal waiver of immunity must be construed narrowly and the 'limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.'" Miller v. United States, 463 F.3d 1122, 1123 (10th Cir. 2006) (quoting In re Franklin Savings Corp., 385 F.3d 1279, 1289-90 (10th Cir.

_____

[6] Although the government did not file a cross-appeal, we can consider this issue because it concerns the district court's subject matter jurisdiction. See Sebelius v. Auburn Reg. Med. Ctr., 133 S. Ct. 817, 824 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time.").

2004)).

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil v. United States, 508 U.S. 106, 113 (1993). Specifically, the FTCA states, in pertinent part, that

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). This exhaustion requirement is "jurisdictional and cannot be waived."[7] Bradley v. United States ex rel. Veterans Admin., 951 F.2d 268, 270 (10th Cir. 1991). "In other words, the FTCA bars would-be tort plaintiffs from bringing suit against the government unless the claimant has previously submitted a claim for damages to the offending agency, because Congress wants agencies to have an opportunity to settle disputes before defending against litigation in

---

[7] The FTCA also includes a statue of limitations that states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless [the] action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

13

court." Smoke Shop, LLC v. United States, 761 F.3d 779, 786 (7th Cir. 2014) (citing McNeil, 508 U.S. at 112 & n.7).

We have stated that the jurisdictional statute can be satisfied by a claimant "filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." Trentadue, 397 F.3d at 852 (quoting Bradley, 951 F.3d at 270). That is, we have effectively construed the term "claim," as employed in § 2675, as encompassing two requirements: (1) a written statement describing the injury in sufficient detail to allow the agency to begin an investigation into the possibility of potentially tortious conduct, and (2) a request for a sum certain in damages. That pragmatic interpretation is consistent with Form SF95, the form typically used for filing administrative claims. As the Seventh Circuit noted long ago, "no statement of legal theories is required" by Form SF95, "only facts plus a demand for money." Murrey v. United States, 73 F.3d 1448, 1452 (7th Cir. 1996). Thus, the "claim" asserted "encompasses any cause of action fairly implicit in the facts." Id.

Applying these principles to the case at hand, we conclude that the facts alleged in Lopez's administrative claim were not sufficient to encompass and give the government notice of his negligent credentialing and privileging claim. To be sure, a negligent credentialing and privileging claim under Colorado law requires proof that the plaintiff was injured by the negligent acts of the improperly credentialed and privileged physician. See Braden v. Saint Francis Hosp., 714

14

P.2d 505, 507 (Colo. App. 1983) ("In extending staff privileges to a doctor, a hospital does not generally expose itself to liability <u>for the doctor's negligence</u> unless it knows or should know of a propensity on the doctor's part to commit negligent acts.") (quoting <u>W. Ins. Co. v. Brochner</u>, 682 P.2d 1213 (Colo. App. 1983) (emphasis added)). But such a claim also requires proof that the hospital/employer breached a legal duty by credentialing and privileging the physician. <u>See id.</u> Nothing in Lopez's administrative claim provided the government with notice that it needed to investigate whether the VA Hospital was negligent in credentialing and privileging Kindt, and it was in turn deprived of any opportunity to settle this potential claim without litigation. Consequently, we conclude that Lopez's administrative claim did not reasonably encompass his negligent credentialing and privileging claim.

In concluding otherwise, the district court focused primarily on irrelevant factors. Specifically, rather than examining whether Lopez's administrative claim provided the government with notice of the relevant facts, the district court instead noted that Lopez's counsel "had no information about the competence of Dr. Kindt at the time of the filing of the administrative claim," and that the claim was "based on information known to the VA hospital." App., Vol. 2 at 124. While both of these facts may be true, nothing in Lopez's administrative claim would have caused the government to investigate whether Kindt was properly credentialed. Further, simply because an agency is in possession of information

15

relevant to a claim does not mean that the agency is aware of the claim itself. To excuse a claim from the FTCA's administrative exhaustion requirements for the reasons stated by the district court would undermine the very purpose of those exhaustion requirements (i.e., to give the agency notice of the claim, an opportunity to investigate, and a chance to settle the claim prior to litigation), and could effectively and improperly extend the FTCA's statute of limitations.

For these reasons, we conclude that the district court lacked subject matter jurisdiction over Lopez's negligent credentialing and privileging claim.

III

We AFFIRM the district court's entry of judgment in favor of the United States on Lopez's claim of medical negligence involving Waller. We REVERSE the district court's judgment in favor of the United States on Lopez's negligent credentialing and privileging claim and REMAND with directions to dismiss that claim for lack of jurisdiction.