CADY, Chief Justice.
In this case, we consider whether a person can properly present a claim against the State without complying with a state appeals board (board) regulation that requires the claimant to personally sign the form. The district court dismissed the claims filed by the plaintiffs in this case because their attorney signed the forms on their behalf. On further review from a decision of the court of appeals affirming the decision of the district court, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for further proceedings.
I. Factual Background and Proceedings.
Paula Segura alleges the State of Iowa was negligent in diagnosing and treating her acute medical condition, leading to a *218 permanent loss of function in her lower extremities. Ricardo Segura, her spouse, alleges loss of consortium. The alleged negligence occurred on May 12, 2009. The Seguras assert they learned of the injury and its cause on May 13, 2009. In April of 2010, the Seguras contacted Iowa City attorney Daniel D. Bernstein about their potential claims. Bernstein agreed to investigate the claim. The Seguras moved to Fort Worth, Texas, and Bernstein maintained “on and off communication.” On May 12, 2011, Bernstein filed two board claim forms on the Seguras’ behalf, signing their names and his own, and writing “per POA.” Bernstein did not attach any document that would show he actually had power of attorney. The claim forms, together with attached appendices, identified the Seguras’ causes of action and included a short summary of the relevant facts.[1] The claim forms also contained personal information, including the Seguras’ and Bernstein’s contact information and social security numbers.
On February 6, 2012 (approximately nine months after filing the claims), the board rejected the Seguras’ claims by letter addressed to Bernstein, stating, “The State Appeal Board, after considering the facts and circumstances forming the basis of your client’s claim and the applicable law, has made a final determination to deny payment of this claim.” On August 3, 2012 (approximately six months after receiving the State’s letter), the Seguras filed their claim in district court.
The State moved to dismiss the Seguras’ petition for lack of subject matter jurisdiction, asserting the Seguras’ failure to sign the claim forms and Bernstein’s failure to provide evidence of power of attorney constituted noncompliance with Iowa Administrative Code rule 543—1.3(3), rendering the filings ineffectual and thus depriving the district court of subject matter jurisdiction. The Seguras resisted, arguing Bernstein was acting as their attorney and should be entitled to file documents on their behalf, and furthermore that strict compliance with administrative rules should not be a prerequisite to jurisdiction. The district court denied the motion, finding it would be more appropriately brought as a motion for summary judgment.
The parties then engaged in a discovery dispute regarding, primarily, expert reports. The Seguras had delayed in obtaining expert witnesses, citing high cost and the potential their claim could be dismissed on jurisdictional grounds. The Seg-uras then moved for declaratory judgment and/or partial summary judgment on the jurisdiction issue, reiterating their arguments from the earlier resistance to the *219 State’s motion to dismiss. This time, the district court agreed with the State and concluded, “[I]t is necessary for a claims form filed under the [Iowa Tort Claims Act] to include evidence of a person’s authority to represent the claimant, if the claims form is not, in fact, signed by the claimant.” Finding Bernstein could not “show[ ] that the claims forms were completed according to the administrative rules,” the district court dismissed the petition.
The Seguras appealed. They reiterated the arguments presented to the district court, but included additional legal authority and recast the issue from “whether [the Seguras’] attorney’s signature on their behalf was a harmless error in the administrative process” to whether “the State Ap.peal Board claim, forms presented by claimants Paula and Ricardo Segura provided adequate notice of their claim to the State in order for the State to commence its own investigation.” The State claimed that the Seguras were attempting to argue a new, “substantive” issue that was not preserved, that the only issue on appeal should be whether the Seguras complied with the “procedural” requirements of the Iowa Tort Claims Act (ITCA), and that the Seguras failed to do so by failing to personally sign the forms. The court of appeals agreed with the State on both error preservation and the merits and adopted the district court’s ruling without further opinion. We granted further review.
II. Standard of Review.
“A ‘court has inherent power to determine whether it has jurisdiction over the subject matter of the proceedings before it.’” Klinge v. Bentien, 725 N.W.2d 13, 15 (Iowa 2006) (quoting Tigges v. City of Ames, 356 N.W.2d 503, 512 (Iowa 1984)). Our review is for correction of errors at law. Schaefer v. Putnam, 841 N.W.2d 68, 74 (Iowa 2013); see also Iowa R. App. P. 6.907.
III. Analysis.
“It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.” Meier v. Senecaut, 641 N.W.2d 532, 537 (Iowa 2002). “[0]ne purpose of our error preservation rules is to ensure that the opposing party and the district court are alerted to an issue at a time when corrective action can be taken or another alternative pursued.” Top of Iowa Coop. v. Sime Farms, Inc., 608 N.W.2d 454, 470 (Iowa 2000); see also Office of Consumer Advocate v. Iowa State Commerce Comm’n, 465 N.W.2d 280, 283 (Iowa 1991). “Error preservation does not turn, however, on the thoroughness of counsel’s research and briefing so long as the nature of the error has been timely brought to the attention of the district court.” Summy v. City of Des Moines, 708 N.W.2d 333, 338 (Iowa 2006), overruled in part on other grounds by Alcala v. Marriott Int’l, Inc., 880 NW.2d 699, 708 n.3 (Iowa 2016). Similarly, error preservation does not turn on “hypertechnical” challenges. Ezzone v. Riccardi, 525 N.W.2d 388, 403 (Iowa 1994).
In their motion for declaratory judgment, the Seguras characterized the issue as “whether the fact that Claimant[]s, themselves, failed to sign the State Appeal Board Claim Forms denies the District Court for the State of Iowa the jurisdiction to hear the lawsuit.” In their brief in support of the motion, they posed the question, “To what extent must a claimant comply with the promulgated state tort claim form in order to properly submit a claim?” They pointed out that the board was able to investigate their claims despite their failure to sign the form. They argued to distinguish our eases holding claims must *220 be brought by individuals authorized to bring them. In short, the argument the Seguras presented should have been more than enough to alert the court of the claimed error. See Ezzone, 525 N.W.2d at 403 (finding error preserved when challenge was hypertechnical); Office of Consumer Advocate, 465 N.W.2d at 283-84 (finding error preserved when a party alleged a violation of “procedural fairness” despite that party’s failure to identify the Fourteenth Amendment’s Due Process Clause as the source of the right); see also Bartlett Grain Co., LP v. Sheeder, 829 N.W.2d 18, 24 n.4 (Iowa 2013) (finding error preserved, even though parties did not cite to specific UCC provision because appellant alerted the court of its “essential claim”). The district court’s ruling, which not only noted the Seguras had argued “that the act of retaining their counsel is, in and of itself, sufficient to permit their counsel to sign the claim forms on their behalf,” but found federal precedent persuasive and stated it “considered] the reasoning in Kanar[ v. United States, 118 F.3d 527 (7th Cir. 1997)] as [it] considered] whether Plaintiffs’ claims in the present case must be dismissed,” shows it considered and decided the arguments to the contrary. See Lamasters v. State, 821 N.W.2d 856, 864 (Iowa 2012) (“If the court’s ruling indicates that the court considered the issue and necessarily ruled on it, even if the court’s reasoning is ‘incomplete or sparse,’ the issue has been preserved.”); see also Kanar, 118 F.3d at 530-31 (discussing what is required under the Federal Tort Claims Act to present a claim).
Error was preserved in this matter. We therefore reach the underlying issue. Doing so, we conclude the district court erred in dismissing the Seguras’ claims and hold a claim is properly presented to the board when it identifies sufficient information for the board to investigate the claim and discloses the amount of damages claimed. Finding the Seguras did so, we reverse and remand for further proceedings to address the merits of their claims.
A. Background. The doctrine of sovereign immunity is judicial, not constitutional or statutory in origin. See Boyer v. Iowa High Sch. Athletic Ass’n, 256 Iowa 337, 347, 127 N.W.2d 606, 612 (1964). We have consistently held it is a jurisdictional bar. See Montandon v. Hargrave Constr. Co., 256 Iowa 1297, 1299, 130 N.W.2d 659, 660 (Iowa 1964) (“[The state] is immune from suit except where immunity is waived by statute and ... there is no statutory waiver or consent to jurisdiction in tort actions.”). Leading up to the enactment of the ITCA, this court faced challenges to sovereign immunity. See Montandon, 256 Iowa at 1299, 130 N.W.2d at 660; Boyer, 256 Iowa at 347, 127 N.W.2d at 612. We declined to abrogate our doctrine and left the issue to the legislature. See Boyer, 256 Iowa at 347, 127 N.W.2d at 612.
In 1965, the legislature took the opportunity and passed the ITCA. 1965 Iowa Acts ch. 79, §§ 1-23 (codified at Iowa Code §§ 25A.1-25A.20 (1966)). It became effective on March 30, 1965. See Hubbard v. State, 163 N.W.2d 904, 906 (Iowa 1969).
Prior to passage of the Iowa Tort Claims Act in 1965, the maxim that “the King can do no wrong” prevailed in Iowa. No tort action could be maintained against the State or its agencies. Throughout this period of time, one who suffered damages as the result of a negligent or wrongful act of a State employee had the limited choice of bringing suit against the employee personally or seeking redress from the Iowa General Assembly in the form of private relief.
Don R. Bennett, Handling Tort Claims and Suits Against the State of Iowa: Part I, 17 Drake L. Rev. 189, 189 (1968) (foot *221 notes omitted) [hereinafter Bennett]. By enacting the ITCA, the State waived this immunity and opened itself to suit, but it did so strictly on its terms. See id. at 190.
The case of Graham v. Worthington was our first assessment of the ITCA, and we used the opportunity to uphold the Act’s constitutionality. See generally 259 Iowa 845, 850-70, 146 N.W.2d 626, 630-42 (1966). When it was challenged for being an unlawful delegation of legislative authority, we stated,
It is for the General Assembly to enact laws governing expenditure of state funds including the appropriation of moneys for payment. But once this is constitutionally done the procedures, mechanics, the fact finding process upon which payment shall be made, may with reasonably proper guides or standards be delegated to judicial or quasi-judicial bodies.
Id. at 857, 146 N.W.2d at 635.
Later, in Charles Gahus Ford, Inc. v. Iowa State Highway Commission, we found Iowa Code section 25A.5 (now section 669.5) made exhaustion “a condition precedent to the right to resort to the courts.” 224 N.W.2d 639, 648 (Iowa 1974). We looked at the rationales for exhaustion, calling it “a product of the exercise of judicial restraint, resting on considerations of comity and convenience.” Id. We noted it “is designed to promote orderly procedures within the judicial system by requiring a preliminary administrative sifting process,” and that by invoking the doctrine, courts “seek to avoid interfering with the functions of the administrative agency.” Id.
The source of the exhaustion requirement is section 669.5(1), which provides in part,
A suit shall not be permitted ... unless the attorney general has made final disposition of the claim. However, if the attorney general does not make final disposition of a claim within six months after the claim is made in writing to the director of the department of management, the claimant may, by notice in writing, withdraw the claim from consideration and begin suit under this chapter.
Iowa Code § 669.5(1) (2013); see also Feltes v. State, 385 N.W.2d 544, 547 (Iowa 1986) (finding section 669.5 “requires that all claims be submitted to an agency and a final decision be made or six months have passed before suit is initiated”). Part of exhaustion is “presentment”: The plaintiff must first present the claim to the appropriate administrative body. See In re Estate of Voss, 553 N.W.2d 878, 880 (Iowa 1996). The presentment requirement and related administrative processes are “intended to allow a prompt investigation of claims against the State and facilitate an early settlement when possible.” Id. at 881.
The State argues the source of the presentment requirement is not the same as the source of the exhaustion requirement. Instead, the State asserts the source of the presentment requirement is section 669.3, which provides, “A claim made under this chapter shall be filed with the director of the department of management.... ” Iowa Code § 669.3(2). However, reading section 669.3 in its entirety reveals it is not the source of the presentment requirement, but rather the ITCA’s settlement provisions. See Iowa Code § 669.3(1) (“The attorney general, on behalf of the state of Iowa, shall consider, ascertain, adjust, compromise, settle, determine, and allow any claim that is subject to this chapter.”); State v. DeSimone, 839 N.W.2d 660, 666 (Iowa 2013) (“[Statutes must be read in their entirety.”). This section is also the source of administrative authority to promulgate “rules and procedures for the handling, processing, and investigation of *222 claims.” Iowa Code § 669.3(3). These regulations prescribe, in part, the form of claims:
1.3(1) Place of filing. Claims shall be filed in triplicate with the Department of Management, State Capitol, Des Moines, Iowa 50319.
1.3(2) Verification. Claims shall be verified.
1.3(3) Names and signatures. A claim shall state thereon the name, address, telephone number, and age of the person making the claim and the name, address and telephone number of the attorney, if any, preparing the claim, and their signatures.
1.3(4) Designation by number. The executive secretary shall assign a number to each claim. Thereafter it may be referred to by such a number.
Iowa Admin. Code r. 543—1.3(l)-(3).
In McGruder v. State and Swanger v. State, we had the opportunity to consider the interplay between now-Iowa Code sections 669.3 and 669.5. See Swanger v. State, 445 N.W.2d 344, 350 (Iowa 1989); McGruder v. State, 420 N.W.2d 425, 426 (Iowa 1988). In McGruder, we were asked whether a claim must be “filed” according to now-section 669.3 for it to be “made” under now-section 669.13. See McGruder, 420 N.W.2d at 425. We followed federal law interpreting the Federal Tort Claims Act (FTCA) to require receipt of the claim, not mere mailing, to toll the statute. See id. at 426 (citing Anderberg v. United States, 718 F.2d 976, 977 (10th Cir. 1983)). Thus, the plaintiff in McGruder missed the statute of limitations when he mailed the claim form on the final day because the state did not receive the claim for two more days. See id. at 425-26. In Swanger, the plaintiffs argued that when the state’s insurance adjuster took one claimant’s deposition, the claimant presented the claim to the state. See 445 N.W.2d at 350. We reaffirmed our holding in McGruder and went further to expressly tie the term “made,” also in now-section 669.5, to the administrative regulations promulgated under now-section 669.3. See id. at 350-51 (“Following our reasoning in McGruder, we conclude that tort claims are ‘made’ for the purposes of section 25A.5 when the prescribed forms are properly filed with the director of management.”). We noted the board “has prescribed the form and content of tort claims,” and that “for example, [claims] must be verified and signed by the claimant.” See id. at 350 (citing 543 Iowa Admin. Code rs. 1.3, 1.4). Thus, the plaintiffs’ communications to the state’s insurance adjuster were inadequate to commence the six-month period of now-section 669.5. See id. at 351; see also Bloomquist v. Wapello County, 500 N.W.2d 1, 8 (Iowa 1993) (finding claim barred when not specifically identified in claim form and stating “under Iowa law it is incumbent on the claimant to first file a claim before the proper administrative agency, even if, as a practical matter, it would not have changed the State’s approach to the case”).
However, we rejected a formalistic approach in a later case. In Schneider v. State, the state argued “plaintiffs who failed to supply information required by the state appeal board’s administrative rules had failed to exhaust administrative remedies.” 789 N.W.2d 138, 144 (Iowa 2010). The plaintiffs had filed board claim forms, “disclosing] the amount of each claim for property damage and generally describing] the legal theories asserted against the State,” but they failed to respond to requests for additional information. See id. at 144-45. Nevertheless, we noted the board’s failure to invoke its administrative means of inducing the plaintiffs to provide the information was evidence “the board had available to it the information it believed it needed to make *223 its administrative determination.” See id. at 145-46. Because the board ultimately denied the claim, we found “the administrative process ran its course.” See id. at 146. Looking to the underlying principles of the exhaustion doctrine, we found it inappropriate to invoke it, as doing so would not “avoid interference with the administrative process.” See id.
In Foss, we questioned whether the rule “that a plaintiff must have the capacity to sue in order to commence and maintain an action in district court ... applied] to claims filed with the State Appeal Board.” 553 N.W.2d at 880. The plaintiff had filed a claim for her son’s wrongful death in her individual capacity, failing to obtain appointment as administrator of her son’s estate until well after the board denied her claim. See id. at 879. Because the “settlement of claims is greatly facilitated if the person making the claim is the person entitled to any recovery and has the authority to settle,” and the plaintiff lacked that capacity, her claim was barred. Id. at 881. We reiterated a point we had applied elsewhere, that the plaintiffs capacity to sue must exist at the time of filing, and “future appointment ... cannot prevent the expiration of the limitations period.” Id. at 882 (quoting Estate of Dyer v. Krug, 533 N.W.2d 221, 224 (Iowa 1995)). We noted “[a] less theoretical reason” for this rule: “Requiring the Board to delay consideration of a claim while waiting for the claimant to obtain the legal authority to pursue it would defeat the statutory goal of prompt settlement.” Id.
We recently revisited the issue in McFadden v. Department of Transportation, 877 N.W.2d 119, 120 (Iowa 2016). There, like in Foss, the claimant did not attach evidence of her appointment as administrator of her husband’s estate to her board claim form when bringing a claim for his wrongful death. See id. However, the claimant in McFadden, unlike the claimant in Foss, was in fact the administrator at the time she presented the claim. See id. Thus, she was entitled to bring the claim; she simply failed to attach the proof. See id. at 122. The state argued board rules, specifically 1.3(3), required the claimant to disclose her representative capacity. See id. at 123 (citing Iowa Admin. Code r. 543—1.3(3)), We balanced two competing principles: “Our legal processes normally strive to resolve disputes on their merits,” and “[r]ules, especially those which fix jurisdictional matters, are ... vital to the proper conduct of court business.” Id. at 121 (first quoting MC Holdings, L.L.C. v. Davis Cty. Bd. of Review, 830 N.W.2d 325, 328 (Iowa 2013); then quoting Gordon v. Doden, 261 Iowa 285, 288-89, 154 N.W.2d 146, 148 (1967) (alteration in original)). We found the former consideration prevailed, quoting, “[Rjights must not be denied by too strict an application of mere legal formality.” Id. at 123 (quoting McMillan v. Osterson, 191 Iowa 983, 985, 183 N.W. 487, 488 (1921)). Thus, we concluded, “The appeal board’s rules and claim form did not require [the claimant] to allege her representative capacity in presenting the tort claim in this case.” Id.
These two competing principles present themselves again. There is no question the Seguras failed to comply with the administrative rules prescribing the form of claims; they did not personally sign their claim forms.[2] However, the State does not *224 assert this failure hindered its ability to investigate the claim, stating “[h]ow the Board dealt with [the Seguras’] improperly filed tort claims before denying the claims is irrelevant.” Indeed, the board appeared to have the necessary information to handle the claim as it ultimately denied it “after considering the facts and circumstances forming the basis of [the] claim and the applicable law.” Schneider, 789 N.W.2d at 146 n.8 (finding the board’s use of this language showed “the board’s explanation for the denial of the claims appears to have rested on liability considerations rather than the plaintiffs’ failure to sufficiently document their claims”). We are thus called upon to answer a question previously unaddressed: Did the legislature vest the board with the authority to deprive the courts of jurisdiction?
B. Application to the Segu-ras’ Claims. We begin by reaffirming a concept we have consistently applied: Exhaustion is a jurisdictional prerequisite under our interpretation of the ITCA. See McFadden, 877 N.W.2d at 122 (“Exhaustion of the administrative process is jurisdictional, and a suit commenced without complying with this process is subject to dismissal.” (quoting Swanger, 445 N.W.2d at 847)); Feltes, 385 N.W.2d at 547 (“[W]hen an area or subcategory is excepted from the waiver, it is still covered by sovereign immunity, and consequently, the courts have no jurisdiction.”); Charles Gabus Ford, 224 N.W.2d at 648 (“[T]he State Appeal Board has ‘primary’ or ‘exclusive’ jurisdiction of tort claims against the State.”); see also Bennett, 17 Drake L. Rev. at 192 (“It seems obvious that the exhaustion of the administrative process is jurisdictional, and a suit commenced without complying therewith is subject to dismissal.”). Under Iowa law it is well established the district court does not have jurisdiction to hear a tort claim against the state until it has been presented, properly, to the board. See Voss, 553 N.W.2d at 880; Charles Gabus Ford, 224 N.W.2d at 648. We also recognize that jurisdictional matters must be carefully construed. See McFadden, 877 N.W.2d at 121. If the Seguras failed to exhaust their administrative remedies by improperly presenting their claim, the district court was correct to determine it lacked jurisdiction. Voss, 553 N.W.2d at 880 (“Improper presentment of a claim, or not presenting one at all, has been considered a failure to exhaust one’s administrative remedies, depriving the district court of subject matter jurisdiction.”).
Our polestar is legislative intent. See id. “In construing a statute, we look to the object to be accomplished and give the statute a meaning that will effectuate, rather than defeat, that object.” Id. We have previously held the legislative intent in creating the administrative process under chapter 669 was “to allow a prompt investigation of claims against the State and facilitate an early settlement when possible.” Id. at 881. The exhaustion requirement furthers this purpose. See Schneider, 789 N.W.2d at 145 (‘We have noted that the doctrine requiring a plaintiff to exhaust administrative remedies ‘is designed to promote orderly procedures within the judicial system by requiring a *225 preliminary administrative sifting process.’ ” (quoting Charles Gabus Ford, 224 N.W.2d at 648)). And, obviously, the legislature delegated some authority to allow the functioning of this investigation and settlement process. Se.e Iowa Code § 669.3(3). However, while exhaustion of administrative remedies is a jurisdictional prerequisite, and our legislature clearly intended this process be governed by administrative rule, we have not held the legislature intended to delegate the authority to set the jurisdiction of our courts.
As noted above, the source of the presentment requirement is Iowa Code section 669.5. See Feltes, 385 N.W.2d at 547. Section 669.5 does not delegate administrative authority. See generally Iowa Code § 669.5(l)-(2). Rather, the board’s authority comes from section 669.3. See id. § 669.3(3). Section 669.3 governs claims processing and gives the board the authority to “adopt rules and procedures for the handling, processing, and investigation of claims.” Id. This delegation does not say “for the presentment of claims,” but “for the handling, processing, and investigation of claims.” This indicates the legislature only intended to delegate the authority to promulgate rules necessary to investigate and settle claims, not to govern their initial presentment for exhaustion under section 669.5. See Thomas v. Gavin, 838 N.W.2d 518, 524 (Iowa 2013) (noting the statutory construction rule of expressio unius est exdusio alterius). Any statements to the contrary in our precedent are distinguishable on this point. McGruder merely stands for the proposition that sections of the ITCA may work in harmony—that a claim is not properly presented until the board receives it. See 420 N.W.2d at 426. This is not controlled by administrative rule but by statute. See id. Nor does our statement in Swanger, “tort claims are ‘made’ ... when the prescribed forms are properly filed,” control. 445 N.W.2d at 351. Section 669.5 requires the claim be made in writing. See Iowa Code § 669.5. In Swanger, the claimant asserted it was made by mere statements in a deposition. See 445 N.W.2d at 351.
We can also look to the principles of exhaustion to support this conclusion. See Charles Gabus Ford, 224 N.W.2d at 648. Exhaustion under section 669.5 requires a claim be made in writing so that the attorney general has the opportunity to make a final disposition of the claim. See Iowa Code § 669.5(1). The administrative process cannot “r[u]n its course” absent key information. Schneider, 789 N.W.2d at 146. A signature, made in the presence of a notary and filed in triplicate, is not key information to the disposition of a claim. Cf. Iowa Admin. Code r. 543—1.3(1)—(3), These requirements, just like the additional requirements of the claimant’s address, telephone number, and age, are more appropriately characterized as claims-pro-eessing rules. See id. Thus, they are appropriately promulgated pursuant to the delegation to adopt rules governing handling and processing, but they are not rules governing presentment. The failure to comply with these administrative rules alone should not deprive a district court of jurisdiction.
The State argues this court’s opinion in Foss controls. The claim in Voss was not barred because the claimant failed to comply with an administrative rule; the claim was barred because the claimant did not have the capacity to bring it. See 553 N.W.2d at 880, 882 (“It is ‘an elementary rule of law* that a plaintiff must have the capacity to sue in order to commence and maintain an action in district court.” (quoting Dumbaugh v. Cascade Mfg. Co., 264 N.W.2d 763, 765 (Iowa 1978))). When a claimant has the capacity, even if they do not attach proof with their initial claim, the *226 claim is not barred. See McFadden, 877 N.W.2d at 122. There is no allegation Paula Segura lacks the capacity to bring her medical malpractice claim, nor is there an allegation Ricardo Segura lacks the capacity to bring his loss-of-consortium claim. The holding of Voss simply does not apply to an attorney’s ability to bring a claim on behalf of his or her clients, the true claimants. Iowa Code section 602.10114(1) authorizes an attorney to “[ejxecute in the name of a client a bond, or other written instrument, necessary and proper for the prosecution of an action or proceeding about to be or already commenced.” See Iowa Code § 602.10114(1) (emphasis added). So, too, do our rules of civil procedure. See Iowa R. Civ. P. 1.411(1) (“Each appearance, notice, motion, or pleading ... shall bear the signature ... of the party or attorney filing it.” (Emphasis added.)). If there was any doubt, the Seguras dispelled it by filing affidavits stating Bernstein had the authority to bring their claims. Thus, Voss is inapplicable.
We find the administrative regulations promulgated under section 669.3 do not define the jurisdictional ambit of the presentment requirement under section 669.5. Instead, a claim is properly presented when it, in writing, identifies sufficient information for the board to investigate the claim and discloses the amount of damages claimed. We reach this finding by applying our rules of statutory construction, relying on the underlying principles of the exhaustion requirement, and building on our existing precedent. We note, however, that this view is consistent with the vast majority of federal courts interpreting the FTCA; these courts similarly distinguish between presentment under 28 U.S.C. § 2675(a) and claims processing under 28 U.S.C. § 2672.[3] See GAF Corp. v. United States, 818 F.2d 901, 918-19 (D.C. Cir. 1987) (“Thus we hold, with the Ninth Circuit and the majority of appellate courts to have considered the question, that Section 2675(a) requires a claimant to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim.”); see also Lopez v. United States, 823 F.3d 970, 976 (10th Cir. 2016) (same); Pleasant v. United States, 764 F.3d 445, 448 (5th Cir. 2014) (same); Blair v. IRS, 304 F.3d 861, 865 (9th Cir. 2002) (same); Santiago-Ramirez v. Sec’y of Dep’t of Def., 984 F.2d 16, 19 (1st Cir. 1993) (same); Conn v. United States, 867 F.2d 916, 918-19 (6th Cir. 1989) (same); Tidd v. United States, 786 F.2d 1565, 1567 (11th Cir. 1986) (same); Tucker v. U.S. Postal Serv., 676 F.2d 954, 959 (3d Cir. 1982) (same). Section 2672 authorizes the Attorney General to adopt rules that allow the relevant federal agency to “consider, ascertain, adjust, determine, compromise, and settle any claim.” 28 U.S.C. § 2672 (2012). But the jurisdictional requirement of presentment and exhaustion appears to be from § 2675, which does not contain a similar delegation of authority. See id. § 2675. Accordingly, federal courts hold “this means [a court] must distinguish between the presentment filing mandated by Section 2675(a) and the settlement procedures of Section 2672.” GAF Corp., 818 F.2d at 918-19 (“Presentment is mandatory; settlement is merely optional. This distinction is crucial for courts called upon to determine their jurisdiction to hear claims *227 under the [FTCA].”)- We look to these federal decisions not to conform our interpretation of the ITCA to their interpretation of the FTCA, but merely for persuasive guidance on ambiguous provisions of similar law, as we have often done. See, e.g., Feltes, 385 N.W.2d at 547 n.5 (comparing now-section 669.5 with 28 U.S.C. § 2675(a)); see also Voss, 553 N.W.2d at 881 n.2 (noting we may “look to the Federal Tort Claims Act and federal cases for guidance in interpreting the Iowa Tort Claims Act”). • -
We hold today that the information we described in Schneider is sufficient to present a claim under the ITCA. See 789 N.W.2d at 144. A claimant presents a claim when the board receives a writing that “disclose[s] the amount of’ damages claimed and “generally describe[s] the legal theories asserted against the State.” Id.; see also Iowa Code § 669.5. This should give the board sufficient information to investigate the claim, which is all that is required for the administrative process to run its course. See Schneider, 789 N.W.2d at 145-46. To facilitate this process, the board is vested with the authority to demand additional information under Iowa Code section 669.3(3). Indeed, it has promulgated rules empowering the special attorney general investigating the claim to administer oaths, take testimony in affidavits, depositions, or interrogatories, and even subpoena witnesses. See Iowa Admin. Code r. 543—1.7. If the board finds the claim form lacks a signature, verification, or any other piece of information it requires under its regulations, it can demand it. However, the administrative rules prescribing the form and content of claims do not operate as a jurisdictional bar to suit if the claim is properly presented and six months pass or the attorney general makes a final disposition. See Iowa Code § 669.5(1).
Applied to the Seguras’ claims, they identified the underlying facts of their causes of action[4] and asserted a claim for damages. They even identified witnesses. There is no allegation the board lacked sufficient information to investigate the claim, and in fact, it appears to have done so. Thus, the Seguras presented their claim, the administrative process ran its course, and they may now proceed before the district court.
IV. Conclusion.
We conclude the district court had jurisdiction to hear the Seguras’ claims. This result is consistent with the ITCA’s text and its purpose of “doing substantial justice.” See id. § 669.9 (“With a view to doing substantial justice, the attorney general is authorized to compromise or settle any suit permitted under this chapter... .”); Graham, 259 Iowa at 853, 146 N.W.2d at 632 (“The self-evident purpose of the [ITCA] is to provide an orderly method by which to compensate those tor-tiously damaged by any officer, agent or employee of the state.... ”). It is consistent with our precedent. See McFadden, 877 N.W.2d at 123 (“[R]ights must not be denied by too strict an application of mere legal formality.” (quoting McMillan, 191 Iowa at 985, 183 N.W. at 488)). It is consistent with the apparent legislative intent, and it is even consistent with the analogous approach of most federal courts. See Mader v. United States, 654 F.3d 794, 810 (8th Cir. 2011) (Bye, J., dissenting) (noting “the judicial consensus is that section 2675 mandates only ‘minimal notice’”); Feltes, 385 N.W.2d at 547 (identifying now-section *228 669.5 as the source of the exhaustion requirement). An alternative holding would deny the Seguras the right to be heard solely because of a state appeal board rule the board never attempted to enforce. The Seguras’ completed claim forms sufficiently presented their claims to the board by enabling it to investigate them, which it apparently did. See Schneider, 789 N.W.2d at 146 n.8. If the board requires a signature while investigating a future claim, it can request it during the six months in which it has exclusive jurisdiction. See Iowa Code § 669.3(3); Iowa Admin. Code r. 543—1.7; Charles Gabus Ford, 224 N.W.2d at 648. This approach accommodates the board’s right to obtain relevant information and verification without barring potentially meritorious claims based on initial noncompliance. Accordingly, we remand this case for further proceedings on its merits.
DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.
All justices concur except Wiggins, J., who concurs specially, and Mansfield and Waterman, JJ., who dissent.

. As follows:
Paula D. Segura was hospitalized at the University of Iowa Hospitals and Clinics, Iowa City, Iowa on May 12, 2009 complaining of epigastric pain. She underwent an endoscopic retrograde cholangiopancreato-gram ("ERCP") performed by William B. Silverman, M.D. During the ERCP Ms. Seg-ura's blood pressure and blood oxygen levels dropped significantly. As a result, Ms. Segura experienced hypoperfusion, or low b[loo]d flow, resulting in lesions in her spinal c[]ord and brain. Because of this, Ms. Segura’s left lower extremity is paralyzed.
And:
Ricardo Segura’s wife, Paula D. Segura, was hospitalized at the University of Iowa Hospitals and Clinics, Iowa City, Iowa on May 12, 2009 complaining of epigastric pain. She underwent an endoscopic retrograde cholangiopancreatogram ("ERCP”) performed by William B. Silverman, M.D. During the ERCP Ms. Segura’s blood pressure and blood oxygen levels dropped significantly. As a result, Ms. Segura experienced hypoperfusion, or low b[loo]d flow, resulting in lesions in her spinal c[ ]ord and brain. Because of this, Ms. Segura’s left lower extremity is paralyzed.

. We acknowledge Iowa Code section 602.10114 gives an attorney the power to sign litigation documents in the name of a client. However, this general power would not necessarily trump a specific requirement for a party to sign a document. See, e.g., Iowa Code § 86.13(3) (authorizing settlement of workers’ compensation claim "only if [the agreement is] signed by all parties and approved by the workers’ compensation commissioner”); id. *224 § 507C.36(l)(g) (requiring in certain insurance matters proof of claim be “signed by the claimant” and include “[t]he name and address of the claimant and the attorney who represents the claimant, if any”); id. § 809.3(3) (requiring an application for the return of seized property “be signed by the claimant under penalty of perjury”). Because we resolve this case on other grounds, we need not reach this issue. See, e.g., Jones v. Univ. of Iowa, 836 N.W.2d 127, 142 (Iowa 2013) (declining to reach statutory construction and constitutional arguments when deciding case on other grounds).

. Even the one jurisdiction that expressly subscribes to the view that administrative regulations define the authority of the district court to hear the claim would likely allow this one to proceed. See Smoke Shop, LLC v. United States, 761 F.3d 779, 787 (7th Cir. 2014) ("So long as the proper agency had the opportunity to settle the claim for money damages before the point of suit, ... technical deficiencies in the administrative claim could well be a case of '[n]o harm, no foul.’ ” (quoting Kanar, 118 F.3d at 531)).

. Ricardo Segura’s form expressly stated it was for loss of consortium. Paula Segura’s form did not state “medical malpractice,” but a reasonable reading of the facts it did state would reveal that is the claim presented.