FILED
**United States Court of Appeals**
**Tenth Circuit**

**November 19, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DUSTIN ALAN ROWLAND,

     Plaintiff - Appellant,

v.

ANDRE MATEVOUSIAN, Regional
Director of the North Central Regional
Office of the Federal Bureau of Prisons;
WILLIAM TRUE, Warden of FCI
Florence; SHARI HIMLIE, Health Service
Administrator, FCI Florence; JOHN DOES
1-5 and JANE DOES 1-5; UNITED
STATES OF AMERICA,

     Defendants - Appellees.

Nos. 23-1343 and 23-1411

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:22-CV-00388-DDD-SKC)**
_____

Emil Lippe, Jr., Law Offices of Lippe & Associates, Dallas, Texas, for Plaintiff-Appellant.

Jaynie Lilley, Attorney, Appellate Staff (Brian M. Boynton, Principal Deputy Assistant Attorney General, and Barbara Herwig, Attorney, Appellate Staff, with her on the brief) United States Department of Justice, Civil Division, Washington, D.C., for Defendants-Appellees.
_____

Before **TYMKOVICH**, **SEYMOUR**, and **EID**, Circuit Judges.
_____

**TYMKOVICH**, Circuit Judge.
_____

Dustin Rowland sued various prison officials, claiming that they violated federal law for failing to provide adequate medical care for his hernia. He claims that they were deliberately indifferent to his serious medical need by repeatedly denying his requests for hernia surgery and post-operative treatment.

The district court dismissed Mr. Rowland's case, finding that there was no federal private right of action for his deliberate indifference claim, and that he failed to exhaust his administrative remedies for his injunctive relief request and his claim under the Federal Tort Claims Act.

We affirm. The Supreme Court has repeatedly emphasized that private rights of action for constitutional claims are disfavored. Mr. Rowland's remedies lie with the procedures provided by the Bureau of Prisons' Administrative Remedial Program.

## I.    Background

Mr. Rowland is a federal inmate who developed a hernia after getting into a fight during pretrial detention. A physician examined Mr. Rowland and concluded that his hernia was "reducible and stable." Accordingly, the physician recommended measures short of a surgery, such as the use of an abdominal binder, and massage techniques to assuage any discomfort or pain. The physician also issued a pass that guaranteed Mr. Rowland access to a bottom bunk. But despite the physician's recommendations, Mr. Rowland wanted surgery, so he resorted to the Bureau of Prisons' (BOP) Administrative Remedial Program to make that request.

The BOP's Administrative Remedial Program proceeds in four steps. First, the prisoner must submit a BP-8 form, which is a complaint to the BOP that aims to

2

resolve the dispute informally. 28 C.F.R. § 542.13. If that attempt fails, the prisoner can submit a BP-9 form, which is an appeal to the warden. *Id.* § 542.14. If the warden rejects the appeal, the prisoner can submit a BP-10 form, which is an appeal to the regional director. *Id.* § 542.15(a). When submitting the BP-10 form, the prisoner must attach the prior BP-9 denial. *Id.* § 542.15(b). If the BP-10 form is denied, the prisoner can submit a BP-11 form, which is an appeal to the general counsel at the central office. *Id.* § 542.15(a). When submitting the BP-11 form, the prisoner must attach the previous BP-9 and BP-10 denial notices. *Id.* § 542.15(b).

Mr. Rowland first submitted a BP-8, and then a BP-9 form. Both forms were denied based on the doctor's recommendation that Mr. Rowland continue treating his hernia with measures short of surgery. Mr. Rowland did not immediately appeal those denials.

Months later, however, Mr. Rowland tried again, submitting a new BP-9 form to request surgery for his hernia. That request was denied. Mr. Rowland then appealed that decision by filing a BP-10 form, and this time, the BOP approved a "routine consultation for evaluation by general surgery," but noted that Mr. Rowland would "not be notified of the date of that appointment" because of "safety and security concerns." App. Vol. IV at 904. Moreover, the health director "defer[red] diagnostic and treatment interventions to the Health Services staff at the local level." *Id.*

Unsatisfied with that decision, Mr. Rowland appealed by filing a BP-11 form. This appeal was denied for a procedural reason: Mr. Rowland had failed to attach his

3

immediately prior BP-9 denial form.[1]  *Id.* at 907.  In the BP-11 denial notice, Mr. Rowland was instructed to correct this procedural deficiency "within 15 days of the date of this rejection notice."  *Id.*  The notice was dated November 15, 2021.  *Id.*  But Mr. Rowland received the BP-11 denial notice on December 9, 2021, which was *after* the fifteen-day window to cure had passed.  *Id.*  Still, he took no steps to cure the procedural deficiency despite its tardiness.  Three months after receiving this denial notice, Mr. Rowland received surgery for his hernia.  App. Vol. II. at 374.

Mr. Rowland filed this lawsuit, arguing that various prison officials violated the Eighth Amendment by showing deliberate indifference to his serious medical condition.  He seeks damages for this alleged constitutional violation under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and requests injunctive relief for proper post-operative care after his hernia surgery.  He also asserts a negligence claim under the Federal Tort Claims Act (FTCA) against the federal government.  Defendants moved to dismiss the *Bivens* claim and moved for summary judgment on the injunctive relief and FTCA claims.

The district court dismissed all of Mr. Rowland's claims.  The district court found that *Bivens* did not extend to Mr. Rowland's case, granted summary judgment on the injunctive relief claim for failure to exhaust his administrative remedies, and dismissed for lack of subject matter jurisdiction the FTCA claim for failure to

---

[1] Mr. Rowland states he never received his BP-9 denial notice.  If that is true, the BP-10 form should have been denied on the same procedural basis as his BP-11 form, since it also presumably lacked the BP-9 denial notice.  The record does not explain this anomaly.

exhaust. As for the injunctive relief claim, the district court found that all of Mr. Rowland's BOP submissions concerned his requests for hernia surgery—not for post-operative care. And even if those submissions for hernia surgery could be construed broadly to *include* post-operative care, the district court found that Mr. Rowland's claim would still fail because he did not exhaust his remedies at the final level of review. The district court concluded that, even if Mr. Rowland had not initially received the BP-9 denial form, which is what he argued at summary judgment, he should have done something to notify the BOP about this and attempt to retrieve it. Instead, he did nothing.

After the district court's judgment became final, Mr. Rowland moved for reconsideration of his injunctive relief request under Fed. R. Civ. P. 60(b), advancing a different argument entirely as to why he could not cure his BP-11 form and thereby exhaust his administrative remedies. In that motion, Mr. Rowland argued for the first time that the district court was mistaken in finding that he had an opportunity to cure his BP-11 form, since he had actually received the BP-11 denial notice after the fifteen-day window to cure had passed. Thus, it was impossible or futile for him to correct the procedural deficiency.

The district court denied the motion because, among other things, Mr. Rowland could have raised this argument on summary judgment but did not do so. The fact that he received the BP-11 notice late was not new information, since after all, the date-stamped BP-11 denial notice was attached to the Defendants' summary

5

judgment motion, and a motion for reconsideration was not a means to raise arguments that could have been raised previously.

Mr. Rowland appeals the dismissal of all his claims.

## II.    Discussion

Mr. Rowland contends the district court erred in dismissing his *Bivens* claim, granting summary judgment on his injunctive relief for failure to exhaust his administrative remedies, and dismissing for lack of subject matter jurisdiction the FTCA claim for failure to exhaust. We conduct a de novo review of a district court's determinations on a motion to dismiss and summary judgment. *Johnson v. Smith*, 104 F.4th 153, 167 (10th Cir. 2024); *Yousuf v. Cohlmia*, 741 F.3d 31, 37 (10th Cir. 2014).

### A. *Bivens*

Having come on the scene during an "*ancien regime*" where the Supreme Court "routinely" implied causes of action, *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017), *Bivens* is now all but dead. *See Mohamed v. Jones*, 100 F.4th 1214, 1236, 1237 (10th Cir. 2024) (Tymkovich, J., dissenting) (observing that the Supreme Court's "abrogative process [of *Bivens*] has been 'gradual, but relentless'" such that the "'right answer' to whether to recognize a *Bivens* cause of action 'will always be no'") (citations omitted). So much so, in fact, that the Supreme Court has not recognized a *Bivens* claim since 1980, and it has unambiguously stated that "if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution." *Egbert v. Boule*, 596 U.S. 482, 502 (2022).

6

And this makes sense.  A *Bivens* action "places great stress on the separation of powers" by allowing the judiciary to intrude upon the exclusive law-making domain of the legislature.  *Egbert*, 596 U.S. at 498 n.3.  After all, "[w]hen a court recognizes an implied claim for damages"—as is the case for a *Bivens* claim—it "create[s] a new cause of action [that] assign[s] new private rights and liabilities—a power that is in every meaningful sense an act of legislation."  *Id.* at 503 (Gorsuch, J., concurring).  Therefore, given that it is a "significant step under separation-of-powers principles for a court . . . to create and enforce a cause of action for damages," *Ziglar*, 582 U.S. at 133, the Supreme Court has scaled back its *Bivens* jurisprudence considerably—effectively relegating it to a "relic of the 20th century." *Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1355 (10th Cir. 2024).  And this message has not gone unnoticed, as we are on record stating that extending *Bivens* would be "an action that is impermissible in virtually all circumstances." *Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022).

Still, Mr. Rowland believes he can thread the needle.  So, to answer this contention, we must embark upon the two-step *Bivens* inquiry to see if his claims are cognizable.  Accordingly, we must *first* examine whether Mr. Rowland's case arises in a new *Bivens* context, or in other words, analyze whether his case is "meaningful[ly]" different from the three cases in which the Court has implied a

7

damages action." *Egbert,* 596 U.S. at 492.[2]  *Second*, we must consider whether there are special factors suggesting that the "the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Id.* (quoting *Ziglar*, 582 U.S. at 136).  "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy."  *Id.* (citation omitted).

### 1.    Mr. Rowland's Case Presents a New *Bivens* Context

None of the three previously recognized *Bivens* cases—*Bivens* itself, *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980)—is on all-fours with Mr. Rowland's case.  Mr. Rowland analogizes his case to *Carlson*, which was an Eighth Amendment lawsuit against prison officials for deliberate indifference to a serious medical need.  446 U.S. at 16.  Since his case also alleges deliberate indifference by prison officials in violation of the Eighth Amendment, Mr. Rowland claims his case breaks no new ground.

But the similarities between Mr. Rowland's case and *Carlson* start and end there.  And what is worse for Mr. Rowland, the Supreme Court has stated that "[a] claim may arise in a new context *even if* it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."  *Hernandez v. Mesa*, 589 U.S. 93, 102, (2020) (emphasis added).

---

[2] The Supreme Court has only recognized *Bivens* claim in three cases: *Bivens* itself, *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980).

Indeed, given the "expressed caution about extending the *Bivens* remedy," even "significant parallels to one of the Court's previous *Bivens* cases" may not be enough to show that a case arises in the same context. *Ziglar*, 582 U.S. at 147. "Small" differences can "easily satisf[y]" the "new-context inquiry." *Id.* at 149.

Here, Mr. Rowland's case contains more than "small" differences from *Carlson* in terms of "the generality or specificity of the official action." *Ziglar*, 582 U.S. at 140. Consider the following allegations in *Carlson*:

- Prison officials acted *against* the doctor's orders by keeping the plaintiff in a medical facility that was known to be "gross[ly] inadequate"

- The prisoner did not receive "competent medical attention for some eight hours after he had an asthmatic attack"

- The prisoner was "[a]dministered contra-indicated drugs which made [the prisoner's] attack more severe"

- Prison officials attempted to use a respirator known to be inoperative which further impeded the prisoner's breathing

- The prisoner died as a result

446 U.S. at 16 n.1.

These allegations are significantly different from the ones presented by Mr. Rowland. For example, the prison officials did not act contrary to the doctor's recommendations for treating Mr. Rowland's hernia; rather, their actions were *consistent* with the physician's conclusion that the hernia should be treated with more conservative measures short of surgery. Moreover, unlike *Carlson*, the prison officials did not (1) give "contra-indicated drugs" to Mr. Rowland, (2) knowingly keep him in a medical facility that was "grossly inadequate" and contrary to the

doctor's orders, or (3) prescribe or use a medical instrument that was "known to be inoperative." And critically, Mr. Rowland ultimately *did* receive surgery for his hernia.

Mr. Rowland dismisses the significance of these differences, but in doing so, he misunderstands the *Bivens* inquiry. These differences do not disprove that the Defendants were deliberately indifferent to his medical needs. Rather, they show that his case is materially different from *Carlson* and therefore presents a new *Bivens* context. Indeed, these differences are more than "small" and would require, at bare minimum, an impermissible "modest extension" of *Bivens*. *Ziglar*, 582 U.S. at 147, 149.

Because Mr. Rowland's claims are materially different from any of the three cases where a *Bivens* cause of action was recognized, we conclude Mr. Rowland's case arises in a new *Bivens* context.

### 2. Special Factors Counsel Against Extending *Bivens* to Mr. Rowland's Case

The second step of the *Bivens* inquiry dooms Mr. Rowland's case. The court must ask whether there are alternative remedial schemes in place that address the plaintiff's complaints. And here, there is such a scheme: the BOP's Administrative Remedial Program. The Administrative Remedial Program provides Mr. Rowland the "means through which allegedly unconstitutional actions" (in this case, inadequate medical care) can be "brought to the attention of the BOP and prevented from recurring." *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022).

10

Indeed, Mr. Rowland availed himself of this process twice.[3] As this court has held, the "availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim." *Id.* at 1141. Accordingly, Mr. Rowland's *Bivens* claim fails, since "so long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert v. Boule*, 596 U.S. 482, 498 (2022). The existence of "alternative remedial structures . . . is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action,'" *id.* at 493 (citation omitted), and that reason here, by way of the BOP's Administrative Remedial Program, forecloses Mr. Rowland's claim.

Since Mr. Rowland's case presents a new *Bivens* context, and a remedial scheme already exists to address his complaint, Mr. Rowland's *Bivens* claim fails.

---

[3] Mr. Rowland relies on *Fields v. Fed. Bureau of Prisons*, 109 F.4th 264, 274 (4th Cir. 2024), to argue that the mere existence of an alternative remedial program is insufficient to counsel against extending *Bivens*. But in *Fields*, the Fourth Circuit found that the alternative remedial program was not enough because the prison officials "withheld" and "deliberately thwarted" the "administrative remedies that the executive branch ha[d] implemented to redress such violations." *Id.* at 272, 274. That is not the case here. Quite the contrary, Mr. Rowland availed himself of the Administrative Remedial Program *twice*. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) and *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1224 (10th Cir. 2007) are also inapposite for the same reason. In fact, *Aquilar-Avellaveda* only mentioned in passing that "prison officials prevented [the plaintiff] from completing the administrative process." 478 F.3d at 1224. That case was not about whether an alternative remedial scheme forecloses a *Bivens* claim, but rather whether the plaintiff must plead that he exhausted his administrative remedies in his complaint. *Id.* at 1225.

### 3. Congress Is Better Equipped to Create a Damages Remedy

But to be sure, the most relevant question under *Bivens* now is "whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (citation omitted). And here, Congress will always be better suited to make such a call because, as the Supreme Court has emphasized, recognizing a *Bivens* action improperly merges the "Constitution's separation of legislative and judicial power." *Id.* at 491. And more importantly, courts are simply ill-suited to "predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*." *Id.* at 493 (citation omitted). "That uncertainty alone is a special factor that forecloses relief." *Id.* So, if "the only question is whether a court is 'better equipped' than Congress to weigh the value of a new cause of action, surely the right answer will always be no." *Id.* at 504 (Gorsuch, J., concurring). "At bottom, creating a cause of action is a legislative endeavor," and that is what every *Bivens* action requires courts to do. *Id.* at 491.

Mr. Rowland's case is no exception, and his *Bivens* claim fails on that independent basis alone.

### B. Injunctive Relief

Next, Mr. Rowland contends the district court erred in denying injunctive relief. He claims (1) the administrative remedies were made "unavailable" to him,

12

and (2) the district court granted summary judgment on the mistaken belief that he had the opportunity to cure his BP-11 form, when he did not.

But both of these arguments pertain to Mr. Rowland's request for hernia surgery, which is not at issue anymore. Rather, his request for injunctive relief only pertains to post-operative care, and therefore the only relevant question is whether Mr. Rowland exhausted his administrative remedies for *that* request before filing suit. He has not.[4]

All his submissions as part of the administrative remedial process concerned his request for hernia surgery. *See* App. Vol. II at 425-27, 429-31, 433-34. None of the BOP submissions mentioned post-operative care or liver cysts, and nor could they, since his submissions pre-date his surgery. Indeed, his main argument for why the administrative remedies were "unavailable" to him involves the BOP's handling of two documents—the BP-9 and BP-11 denial notices—both of which concerned his surgery requests, not post-operative care. To the extent Mr. Rowland may have requested post-operative care through some other, informal means, such requests are of no significance, since "*proper* exhaustion of administrative remedies" is required. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis added).

---

[4] As noted above, the district court also found that, even if it were to construe Mr. Rowland's requests for hernia surgery broadly as encompassing a claim for post-operative care, they would still fail because Mr. Rowland failed to exhaust at the final level of review by correcting his BP-11 form.

13

In sum, Mr. Rowland's failure to exhaust his administrative remedies for post-operative care precludes his claim for injunction relief.[5]

## C. The District Court Did Not Abuse Its Discretion in Denying the Rule 60(b) Motion

Mr. Rowland next appeals the denial of his motion for reconsideration under Fed. R. Civ. P. 60(b). In that motion, Mr. Rowland argued the district court was mistaken in finding that he had fifteen days to cure his BP-11 form, when in fact, he did not. He had received the BP-11 denial notice after the fifteen-day window to cure had passed, which according to Mr. Rowland, rendered any attempt to exhaust his administrative remedies, futile. But critically, Mr. Rowland raised this argument for the first time in his motion for reconsideration in the district court. He did not raise this argument on summary judgment, even though he could have. Accordingly, the district court denied the motion for reconsideration.

We review a "district court's denial of Rule 60(b) relief" for abuse of discretion, "keeping in mind that Rule 60(b) relief is extraordinary and may only be granted in exceptional circumstances." *Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016). "We will not reverse the district court's decision on a Rule 60(b) motion unless that decision is "arbitrary, capricious, whimsical, or manifestly unreasonable."

---

[5] Because Mr. Rowland's failure to exhaust his administrative remedies is fatal to his injunctive relief claim, we do not find that the district court abused its discretion in denying him discovery. *See Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) ("We review the district court's denial of a Rule 56(d) motion for an abuse of discretion."). Discovery would have made no difference in resolving his injunctive relief claim.

*Id.* (citation omitted). "[A] Rule 60(b) motion is not an appropriate vehicle to advance new arguments or supporting facts that were available but not raised at the time of the original argument." *Id.*

Putting aside that the district court's denial of Mr. Rowland's injunctive relief request would still stand because he did not exhaust his administrative remedies for *post*-operative care, the district court did not abuse its discretion in denying the motion for reconsideration. To be sure, neither party disputes that Mr. Rowland received his BP-11 denial notice after the fifteen-day window to cure had passed. But there is also no dispute that Mr. Rowland could have raised this argument on summary judgment in the first instance. After all, the dated BP-11 denial notice was attached to the Defendants' summary judgment motion. *See* App. Vol IV at 973. Mr. Rowland did not do so, and tellingly, he fails to explain—or even address—why. A Rule 60(b) motion is not meant to "advance arguments that could have been raised in prior briefing." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Therefore, the district court was within its discretion to deny the motion.[6] *See Lebahn v. Owens*, 813 F.3d 1300, 1308 (10th Cir. 2016) (holding that the district court's denial of the Rule 60(b) motion was not an abuse of discretion because "a party may not use Rule 60(b) to raise arguments that could have been raised earlier").

---

[6] Moreover, Mr. Rowland does not address the district court's point that he did nothing to cure the procedural deficiency—regardless of when he received the denial notice. For instance, Mr. Rowland could have alerted the BOP that he received the BP-11 denial notice late, or that he never received the BP-9 denial form. He did neither of those things.

15

**D. FTCA**

Finally, Mr. Rowland's FTCA claim fails.

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016) (quoting *McNeil v. United States,* 508 U.S. 106, 113 (1993)). This requirement is "jurisdictional and cannot be waived." *Lopez*, 823 F.3d at 976 (citation omitted). A claimant may not file suit until after he has "first presented the claim to the appropriate Federal agency," and that claim has been "finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). Alternatively, a plaintiff may file suit if the agency has failed to make any decision within six months of the claim's filing. *See* 28 U.S.C. § 2675(a).

Here, Mr. Rowland failed to exhaust his administrative remedies before filing this case. Mr. Rowland initially filed this lawsuit on February 11, 2022, *see* App. Vol. I at 8, which was months before he submitted his claim with the BOP on June 2, 2022. *See* App. Vol IV at 985. Moreover, he filed an *amended* complaint on August 10, 2022, *see* App. Vol III. at 790-807, which was before the BOP had acted on his administrative complaint—and before six months had passed since he originally filed his claim, which would have otherwise allowed him to file suit regardless of whether the BOP had acted on his case. *See* 28 U.S.C. § 2675(a). Because Mr. Rowland failed to exhaust his administrative remedies, his FTCA claim fails.

Still, Mr. Rowland argues that even if he failed to exhaust his administrative remedies, his FTCA claim should be abated as opposed to dismissed. But FTCA's

exhaustion requirement is a "jurisdictional" matter. *Lopez*, 823 F.3d at 976; *see Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("As a *jurisdictional prerequisite*, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.") (emphasis added). Accordingly, dismissal of his FTCA claim was proper.

## III. Conclusion

For the reasons stated above, we affirm.