In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-1651

KEVIN BROOKS,

*Plaintiff-Appellant,*

*v.*

JOSH RICHARDSON, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 22-cv-6738 — **Franklin U. Valderrama**, *Judge.*

ARGUED NOVEMBER 13, 2024 — DECIDED MARCH 14, 2025

Before EASTERBROOK, PRYOR, and KOLAR, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Medical personnel at a federal prison camp mistook appendicitis, which afflicted inmate Kevin Brooks, for constipation and COVID-19, which did not. For more than ten days they declined to send him to a hospital for evaluation and treatment. His appendix ruptured and peritonitis ensued. Eventually Brooks recovered, but in the interim he suffered agonizing pain.

In this suit under the doctrine of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Brooks seeks damages from five federal employees. Three treated him and the other two were supervisors. (In a separate suit Brooks also seeks damages from the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80.) The district court dismissed this suit, ruling that it presents a new context to which *Bivens* does not extend. 2024 U.S. Dist. LEXIS 58884 (N.D. Ill. Mar. 31, 2024).

*Bivens* created an extra-statutory claim for damages against federal agents who assertedly violated the Fourth Amendment in the course of an arrest. Within a decade the Supreme Court created two additional extra-statutory claims: one under the Fifth Amendment in a suit filed by a former congressional staffer, see *Davis v. Passman*, 442 U.S. 228 (1979), and another under the Eighth Amendment in favor of a prisoner who asserted that he had received constitutionally inadequate medical care, see *Carlson v. Green*, 446 U.S. 14 (1980).

Since then, the Supreme Court has been leery of extra-statutory damages suits. "At bottom, creating a cause of action is a legislative endeavor." *Egbert v. Boule*, 596 U.S. 482, 491 (2022). The Court has described the creation of a *Bivens* action as "a disfavored judicial activity" and "an extraordinary act that places great stress on the separation of powers." *Id*. at 491, 497 n.3 (citations omitted). In the 45 years after *Carlson*, the Justices have rejected every proposed extension of *Bivens* that they have considered. In addition to *Egbert*, see *Hernández v. Mesa*, 589 U.S. 93 (2020); *Ziglar v. Abbasi*, 582 U.S. 120 (2017); *Minneci v. Pollard*, 565 U.S. 118 (2012); *Hui v. Castaneda*, 559 U.S. 799 (2010); *Wilkie v. Robbins*, 551 U.S. 537 (2007); *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001); *FDIC*

*v. Meyer*, 510 U.S. 471 (1994); *Schweiker v. Chilicky*, 487 U.S. 412 (1988); *United States v. Stanley*, 483 U.S. 669 (1987); *Bush v. Lucas*, 462 U.S. 367 (1983); *Chappell v. Wallace*, 462 U.S. 296 (1983).

Although its current approach apparently rules out novel extra-statutory claims, the Court has not overruled *Bivens*, *Davis*, or *Carlson*. And we cannot see why Brooks's principal theory entails a context different from *Carlson*. Green and Brooks both asserted that a federal prison's staff provided constitutionally deficient medical care. If that was enough in *Carlson*, why not in *Brooks*? The principal argument in *Carlson* against extending *Bivens* to medical care in prison was that the Federal Tort Claims Act establishes a system of compensation, which the Court should not supplement or displace. Such an argument likely would prevail at the Supreme Court today, but it did not prevail in 1980—and, unless the Court overrules *Carlson*, Brooks is among that decision's beneficiaries.

The district judge offered two distinctions that, he concluded, permit Brooks to recover only if *Bivens* is extended to a new context. First, Green's medical problem (an asthma attack) lasted for eight hours, after which he died, while Brooks's appendicitis lasted ten days after the prison's medical staff first saw him for abdominal pain and before he was sent to a hospital. Second, two of the five defendants in this case are supervisors rather than the personnel who provided treatment.

The Department of Justice, which represents all five defendants, does not defend the district judge's approach, and understandably so. After all, Norman Carlson, the lead petitioner in *Carlson v. Green*, was the Director of the Federal Bureau of Prisons, as high up the supervisory hierarchy as one

gets. If both the treating staff and the Director are exposed to *Bivens* claims, local supervisors cannot be carved out. Supervisors may prevail on the merits because *Bivens* does not create vicarious liability, see *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203–05 (7th Cir. 2012) (en banc); *Miller v. Marberry*, 847 F.3d 425, 428–29 (7th Cir. 2017), but that is a different matter. As for the duration of the poor care or the gravity of the condition: these seem more pertinent to the merits than to determining the scope of the holding in *Carlson*.

Instead of defending the district court's reasoning, defendants maintain that their case is unlike *Carlson* because Green alleged intentional misconduct while Brooks alleges deliberate indifference. We don't get it—and not just because Fed. R. Civ. P. 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Given Rule 9(b), details about the way a pleading describes defendants' mental states cannot sink the litigation. More than that: *Farmer v. Brennan*, 511 U.S. 825, 835–40 (1994), holds that "deliberate indifference" is a *kind* of intent for the purpose of the Eighth Amendment. Brooks's allegations therefore fit the model established by *Carlson*.

Defendants offer a second theme: Brooks's request for care at a hospital implicates resource constraints, because a hospital may be unable to accommodate another person (or perhaps the application of medical triage would affect the level of care the referred person received). Once again this seems to us a defense on the merits rather than a potentially different context. All medical resources (whether at a hospital or within a prison) are constrained and must be paid for. Indeed, all resources of every kind are constrained; otherwise they would

be free (which they will be if, as in *Star Trek*, society reaches a post-scarcity phase). The time of prison nurses is scarce. The time of prison doctors is scarce. Hospital beds are scarce. Any sensible prison, like any sensible hospital, will devote re-sources first to the situations that seem most serious and most urgent. If ranking low on a triage calculus is what happened to Brooks, then the defendants may have a good substantive response to his suit (because concern for the needs of other prisoners is not "indifference" to a prisoner's pain). What we will not do is smuggle a potential defense into the pleading stage and use it as a reason why the claim does not exist.

The Supreme Court has not spelled out what it means by a "new context" to which *Bivens* should not be extended. We have tried our hand at that subject recently. *Sargeant v. Barfield*, 87 F.4th 358 (7th Cir. 2023), holds that a challenge to prison officials' housing assignments (which exposed one prisoner to attack by another) is a new context because it implicates non-medical decisions, and litigation under *Bivens* would interfere with the operation of a prison's cell-assignment and grievance-processing mechanisms. In *Snowden v. Henning*, 72 F.4th 237 (7th Cir. 2023), by contrast, we concluded that a claim that officers used excessive force when arresting someone falls within the original scope of *Bivens* itself. We explained: "The context is new if the claim is different in a 'meaningful way' from an earlier *Bivens* claim authorized by the Court. … A difference is 'meaningful' when it involves a factual distinction or new legal issue that might alter the policy balance that initially justified the implied damages remedies in the *Bivens* trilogy." 72 F.4th at 239. By that standard, Brooks's claim does not present a new context. *Carlson* itself considered issues of policy (including the decision to bypass the effect of the Federal Tort Claims Act)

and extended *Bivens* to arguments about constitutionally deficient medical care in federal prisons. We have considered above, and rejected, defendants' effort to smuggle potential substantive defenses into the question whether the suit presents a new context. We therefore hold that Brooks has a viable claim under *Carlson* and survives a motion to dismiss the complaint.

Survives, that is, with respect to the three defendants who treated him (or, in his view, mistreated him). The other two defendants—Elizabeth Harbison (the prison camp's health-services administrator) and Melissa Schreiber (the prison camp's administrator, equivalent to a warden)—are supervisors who did not treat Brooks and so cannot be liable under the holdings of *Iqbal*, *Vance*, and similar decisions. Brooks attempts to avoid this conclusion by contending that these two defendants failed to prescribe appropriate protocols for the first-line medical staff to follow. If that is not just vicarious liability by another name, see *Vance*, 701 F.3d at 203–05, it is assuredly a new context to which *Bivens* and *Carlson* should not be extended.

The adoption of medical protocols poses questions distinct from the hands-on care at issue in *Carlson*. Brooks does not contend that either the Supreme Court or any other circuit has extended *Bivens* to the formulation of medical-care guidelines, policies, or protocols in prison—or for that matter to any other policy-making endeavor (such as the FDA's drafting of regulations affecting health care or OSHA's adoption of regulations affecting workplace safety). Our decision in *Hammer v. Ashcroft*, 570 F.3d 798 (7th Cir. 2009) (en banc), rejects the possibility of *Bivens* liability for supervisors who drafted or declined to change a policy statement dealing with conduct in

prison. If bad or missing protocols lead to harm through negligent (or worse) medical care in prison, the remedy lies against the United States under the Federal Tort Claims Act.

The judgment is affirmed to the extent that it dismisses the claims against Harbison and Schreiber. It is vacated to the extent it concerns the other three defendants, and the case is remanded for further proceedings consistent with this opinion.