# United States Court of Appeals
## For the First Circuit

No. 24-1355

BROC T. WALTERMEYER,

Plaintiff, Appellant,

v.

ROBERT HAZLEWOOD, Warden, FCI Berlin; DIANE L. KISLER,
Physician, FCI Berlin,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya McCafferty, U.S. District Judge]

Before

Montecalvo, Circuit Judge,
Breyer,* Associate Justice,
and Lynch, Circuit Judge.

Samuel Weiss, with whom Rights Behind Bars was on brief, for
appellant.
Jaynie Lilley, Appellate Staff Attorney, Civil Division, with
whom Sarah Carroll, Appellate Staff Attorney, Civil Division, and
Brian M. Boynton, Principal Deputy Assistant Attorney General,
United States Department of Justice, were on brief, for appellees.

May 6, 2025

* Hon. Stephen G. Breyer, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**LYNCH**, **Circuit Judge**.  The dispositive question in this appeal is whether this Eighth Amendment claim for damages against a federal Bureau of Prisons ("BOP") doctor and warden asserted by Broc Waltermeyer, an incarcerated federal inmate, alleging inadequate medical treatment presents a new context and so is meaningfully different from the claim asserted in Carlson v. Green, 446 U.S. 14 (1980).  Applying Egbert v. Boule, 596 U.S. 482 (2022), and Ziglar v. Abbasi, 582 U.S. 120 (2017), we affirm dismissal of this case, albeit on different reasoning than used by the district court.  See Waltermeyer v. Warden, 720 F. Supp. 3d 97 (D.N.H. 2024).

## I.

In Egbert v. Boule and Ziglar v. Abbasi and other cases, the Supreme Court has instructed that judicially created damages causes of action for alleged constitutional violations must be dismissed if the claim arose in a new context than the prior cases which had judicially created such a claim.  See Egbert, 596 U.S. at 492; Ziglar, 582 U.S. at 136.  The Supreme Court had recognized damages claims against federal officials for alleged constitutional violations in three earlier cases: Carlson, Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and Davis v. Passman, 442 U.S. 228 (1979).  In more recent years, the Court has stated that "expanding the Bivens [claim] is now a 'disfavored' judicial activity," Ziglar, 582 at

135 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)), and that "Bivens, Davis, and Carlson were the products of an era when the Court routinely inferred 'causes of action' that were 'not explicit' in the text of the provision that was allegedly violated," Hernández v. Mesa, 589 U.S. 93, 99 (2020) (quoting Ziglar, 582 U.S. at 132). The Supreme Court has not recognized a Bivens-type claim since Carlson in 1980. Since then, the Court has "consistently rebuffed requests to add to the claims allowed under Bivens," Hernández, 589 U.S. at 102, explaining that it "ha[s] come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power,'" Egbert, 596 U.S. at 491 (quoting Hernández, 589 U.S. at 100). See, e.g., Bush v. Lucas, 462 U.S. 367 (1983); FDIC v. Meyer, 510 U.S. 471 (1994); Wilkie v. Robbins, 551 U.S. 537 (2007).

The Supreme Court has structured the analysis we must apply to determine whether Waltermeyer's claims present a new context. We first ask whether the claim presents "'a new Bivens context' -- i.e., is it 'meaningful[ly]' different" from whichever of Bivens, Carlson, or Davis is most similar to the case at hand. Egbert, 596 U.S. at 492 (quoting Ziglar, 582 U.S. at 139); see also Hernández, 589 U.S. at 102. The Court has explained:

> Without endeavoring to create an exhaustive
> list of differences that are meaningful enough
> to make a given context a new one, some

- 3 -

examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Ziglar, 582 U.S. at 139-140. Using these "instructive" "examples," our discussion in the instant case focuses on the third through seventh examples. Id. at 139.

Egbert also requires us to ask whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" Egbert, 596 U.S. at 492 (quoting Ziglar, 582 U.S. at 136). This includes "sound reasons to think Congress might doubt the efficacy or necessity of a damages [claim]," and "if we have reason to pause before applying Bivens in a new context . . . we reject the request." Hernández, 589 U.S. at 102 (first quoting Ziglar, 582 U.S. at 137). Egbert further held that "[w]hile our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages [claim]." Egbert, 596 U.S. at 492.

- 4 -

The parties agree that Carlson is our comparison case. Carlson recognized a Bivens-type Eighth Amendment claim against federal prison officials alleging those officials showed deliberate indifference to the plaintiff's life-threatening asthma-related medical needs, including by keeping him in a facility despite knowing that its medical facilities were grossly inadequate to his needs, acting against the advice of doctors by failing to provide medical treatment for several hours after he suffered an asthma attack, and then administering medically contraindicated drugs which worsened his condition. Carlson, 446 U.S. at 16 n.1. The officials then attempted to use a respirator that was known to be inoperative, which further impeded his breathing, and delayed his transfer to an outside hospital, resulting in the plaintiff's death. Id. As the Court explained:

> More specifically, respondent alleged that petitioners, being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of Jones' chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital. The complaint further alleges that Jones' death resulted from these acts and omissions, that petitioners were deliberately indifferent to Jones' serious

- 5 -

> medical needs, and that their indifference was in part attributable to racial prejudice.

Carlson, 446 U.S. at 16 n.1.

## II.

"We do not credit legal labels or conclusory statements, but rather focus on the complaint's non-conclusory, non-speculative factual allegations and ask whether they plausibly narrate a claim for relief." Cheng v. Neumann, 51 F.4th 438, 443 (1st Cir. 2022). "'[W]e recount the underlying facts as alleged in the complaint,' but 'disregard any conclusory allegations.'" Analog Techs., Inc. v. Analog Devices, Inc., 105 F.4th 13, 14 (1st Cir. 2024) (first quoting Shash v. Biogen, Inc., 84 F.4th 1, 6 (1st Cir. 2023); then quoting Ponsa-Rabell v. Santander Sec. LLC, 35 F.4th 26, 30 n.2 (1st Cir. 2022)). We review the district court's dismissal order de novo. Douglas v. Hirshon, 63 F.4th 49, 54-55 (1st Cir. 2023).

Waltermeyer's operative complaint alleges he received inadequate medical treatment while incarcerated at the Federal Correctional Institute in Berlin, New Hampshire from May 2018 through July 2019. Afterwards, he was transferred to a different federal correctional facility, FCC Coleman Low. He remains incarcerated at the time of this appeal. In September 2018, Waltermeyer requested diagnostic imaging for his chronic knee pain. His doctor at FCI Berlin, defendant Dr. Kistler, honored

- 6 -

his request; she requested and obtained approval for an MRI, which was conducted a little over two months later. Waltermeyer attached his MRI results to his initial pleading such that they are included in the operative complaint. The MRI results state that Dr. Kistler reviewed them, and they include handwritten notes saying, "no surgery needed," "physical therapy," and "ultimate solution: knee total replacement." The notes also read: "interim solution [:] (1) chondroitin sulfate and glucosamine supplements (2) knee bracing (3) no sports or weightlifting (4) pendulum exercises 2 x 1 day - 50 reps (5) on . . . lam [sic] for pain." Waltermeyer admits that Dr. Kistler told him that an outside specialist recommended deferring the knee surgery until he was older. Having reviewed the results of the MRI, Dr. Kistler declined to order surgery at that time but provided non-surgical alternative treatments for his knee condition, and these choices are at the heart of Waltermeyer's operative complaint. In Waltermeyer's view, "[t]he reward outweighs the risk of surgical knee replacements irrespective of Plaintiff's age, or related conditions," and the denial of surgery makes his case like Carlson.

Waltermeyer concedes that he received multiple types of non-surgical medical treatments to address his knee condition. These treatments included bi-annual cortisone injections (although he wanted to receive the injections every month), pain medication, special shoes, knee braces, access to a low bunk, and a cane.

- 7 -

Waltermeyer alleges he nonetheless continued to be in pain and alleges that Dr. Kistler's frequent response to his complaints was, "you just got[ta] deal with the pain" or "[you] just ha[ve] to get use[d] [to] the pain."

Waltermeyer filed a pro se complaint and a motion for a preliminary injunction requiring the defendants to provide him with his desired medical care (as relevant here, knee surgery) on March 6, 2019, against Dr. Kistler and the FCI Berlin warden, Robert Hazlewood.[1] The defendants filed a motion to dismiss and opposed the motion for a preliminary injunction. The district court denied the motion for a preliminary injunction on the magistrate judge's recommendation that the motion was moot because Waltermeyer had been transferred to a different facility such that the defendants, both FCI Berlin officials, were no longer responsible for his care. Waltermeyer then amended his complaint to seek only money damages. In light of his filings and the BOP records he attached to them, defendants filed a new motion to dismiss. The district court dismissed the complaint, holding that Waltermeyer's claims failed because he had an alternative

---

[1] Waltermeyer initially brought other claims related to allegedly inadequate treatment for Hepatitis C and a lipoma. He dropped both claims after receiving further treatment. Waltermeyer also originally named several unnamed defendants who the district court later dismissed. None of those claims or defendants are at issue in this appeal.

administrative remedy.  See Waltermeyer, 720 F. Supp. 3d at 101.
This timely appeal followed.

We do not engage, as appellees suggest, in an analysis of whether Waltermeyer's operative complaint, which never mentions policy, fails on "policy" grounds.  Rather, we hold that factual and legal differences make Waltermeyer's case "meaningfully different" from Carlson.  Waltermeyer's complaint is "meaningfully different" under the analyses required by both Ziglar and Egbert. To be clear, if we found that this case was the same as Carlson, we would be bound by Carlson, which remains good law, unless and until the Supreme Court overrules it.

**III.**

Waltermeyer's primary arguments are that his case is not "meaningfully different" from Carlson because:

(1) he brings his claim under the Eighth Amendment alleging cruel and unusual punishment through inadequate medical care at a federal prison,

(2) the defendant prison doctor and prison warden are of no higher rank than those in Carlson, and

(3) his claim is of personal injury involving "direct harm . . . to an individual in [their] care."

Binding Supreme Court and First Circuit precedent is clear that Waltermeyer's arguments fail.  As Hernández explained, "[a] claim may arise in a new context even if it is based on the same

constitutional provision as a claim in a case in which a damages [claim] was previously recognized." Hernández, 589 U.S. at 103. And in Quinones-Pimentel, we held that a claim arose in a new context because the facts regarding law enforcement acts that allegedly violated the plaintiff's Fourth Amendment rights were meaningfully different from the facts alleged in its comparison case, Bivens. Quinones-Pimentel v. Cannon, 85 F.4th 63, 70-71 (1st Cir. 2023); see also Egbert, 596 U.S. at 495 (instructing that while the facts at issue there "involve[d] similar allegations of excessive force and thus arguably present 'almost parallel circumstances' [to Bivens] . . . these superficial similarities are not enough to support the judicial creation of a cause of action." (quoting Ziglar, 582 U.S. at 139)). Here, we see a distinction between the alleged deliberate indifference, denial of care, and provision of contraindicated care alleged in Carlson and Waltermeyer's allegation that he received substantial treatment, but not the treatment he preferred.

The Court had made this clear even before the Ziglar-Hernández-Egbert trilogy. In Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001), the plaintiff was a federal inmate housed in a facility operated by a private corporation, and he brought a Bivens-type action against the corporation for providing inadequate medical care for his heart condition in violation of the Eighth Amendment. Id. at 64-65. The Court held that the

- 10 -

claim, an Eighth Amendment claim against prison officials for inadequate medical care, was dissimilar to Carlson and that no Bivens action existed. It reasoned: "[t]he purpose of Bivens is to deter individual federal officers from committing constitutional violations," and because the defendants were not individual federal officers, the claim was an extension of Bivens. Id. at 70. The Court emphasized that "[t]he caution towards extending Bivens remedies into any new context, a caution consistently and repeatedly recognized for three decades, forecloses such an extension here." Id. at 74 (emphasis added).[2]

We hold that Waltermeyer's claims are meaningfully different from those at issue in Carlson because here:

1. The prison officials were not on notice of any gross inadequacy in medical care at FCI Berlin, nor does the complaint here allege gross inadequacy of medical care.

2. The medical procedures administered by the medical staff under the warden's supervision were not contrary to medically advised procedures.

---

[2] And in Minneci, the Court held that no Bivens claim existed where "a federal prisoner s[ought] damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amount[ed] to a violation of the Eighth Amendment, and where that conduct [wa]s of a kind that typically falls within the scope of traditional state tort law." Minneci v. Pollard, 565 U.S. 118, 131 (2012).

3. To the contrary, Waltermeyer alleges he received numerous treatments and accommodations to treat his condition, and the procedures and treatments provided were in accordance with doctors' recommendations. In particular, unlike in Carlson, where both the lack of treatment and several of the treatments administered were medically contraindicated, there are no such allegations here. Waltermeyer's MRI results indicated that no knee replacement surgery was needed at the time he requested it. This case involves not the denial of care but the timing of medical treatments which were in accord with doctors' instructions.

4. Waltermeyer did receive from the defendant officials medical treatments for his knees which helped alleviate his pain. He was also provided treatment in the form of cortisone shots, pain medication, special shoes, knee braces, access to a low bunk, and a cane.

5. There was no deliberate indifference analogous to Carlson; rather, he received a timely MRI, cortisone shots, and the other treatments described above.

6. The claim does not involve a wrongful death-like action and at no time did the alleged failure to adequately treat concern either a life-threatening condition or extreme pain.

These are meaningful differences. Moreover, under Ziglar, the pleadings here are meaningfully different under the third, fourth, fifth, sixth, and seventh "instructive" "examples":

differences in "the generality or specificity of the official action," "the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted," "the statutory or other legal mandate under which the officer was operating," and "the risk of disruptive intrusion by the Judiciary into the functioning of other branches." Ziglar, 582 U.S. at 139-40.[3]  Under Egbert, these differences amount to "special factors," see Egbert, 596 U.S. at 490-93, which involve different concerns about Judiciary involvement in healthcare services for federal inmates.

This holding is supported by Rowland v. Matevousian, 121 F.4th 1237, 1243 (10th Cir. 2024), in which the Tenth Circuit held that the Eighth Amendment claims that prison officials were deliberately indifferent in treating the plaintiff's hernia were meaningfully different from those at issue in Carlson. Rowland's doctor recommended treatments short of surgery, but Rowland wanted surgery and filed petitions through the Administrative Remedial Program to that effect.  Id. at 1240, 1243.  The Tenth Circuit held that Rowland's claim presented a "new context" from Carlson since "the prison officials [in Rowland's case] did not act

_____

[3] These dissimilarities with Carlson require dismissal, even before there is any need to address the question of whether the complaint would survive a plausibility standard under Fed. R. Civ. P. 12(b)(6) for motions to dismiss, had a cause of action been stated.  We reject Waltermeyer's argument that the case should survive at least until discovery is completed.

contrary to the doctor's recommendations for treating Mr. Rowland's hernia; rather, their actions were consistent with the physician's conclusion that the hernia should be treated with more conservative measures short of surgery." Id. at 1243. Likewise, Waltermeyer's doctor also chose more conservative measures that were short of surgery. Moreover, the Tenth Circuit held that unlike in Carlson, the prison officials "did not (1) give 'contra-indicated drugs' to Mr. Rowland, (2) knowingly keep him in a medical facility that was 'grossly inadequate' and contrary to the doctor's orders, or (3) prescribe or use a medical instrument that was 'known to be inoperative.'" Id. Citing Ziglar, the court determined that even "small" differences can "'easily satisf[y]' the 'new context inquiry,'" but that those differences were not small. Id. (quoting Ziglar, 582 U.S. at 149). The same is true here.[4]

Our sister circuits have similarly rejected the creation of new Eighth Amendment damages claims factually distinct from

---

[4] Whether or not Brooks v. Richardson, 131 F.4th 613 (7th Cir. 2025), is correct in its Carlson/Bivens analysis, it is distinguishable from our case. The Seventh Circuit held that an inmate's Eighth Amendment damages claim for inadequate medical treatment was not a new context for Bivens where the inmate alleged that the prison's medical staff failed to treat him for appendicitis. See id. at 614-15. The case is distinguishable: Brooks involved a total failure to treat for appendicitis, a potentially life-threatening condition, unlike this case where Waltermeyer was provided with treatment for his knee pain. See id. The Brooks plaintiff, unlike Waltermeyer, also did not seek contraindicated treatment. See id.

Carlson.[5]  See Ahmed v. Weyker, 984 F.3d 564, 568 (8th Cir. 2020) (articulating that meaningful differences from Carlson can include "the sorts of actions being challenged, the mechanism of injury, and the kinds of proof those injuries would require" (quoting Farah v. Weyker, 926 F.3d 492, 500 (8th Cir. 2019))); Crespo v. Carvajal, No. 24-1138, 2025 WL 635497, at *1 (2d Cir. Feb. 27, 2025) (unpublished) (holding that inmates' claims presented a new context "even though they may be 'based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized'" (quoting Hernández, 589 U.S. at 102)). Other circuits have also often emphasized that "[t]he Supreme Court has warned lower courts to act with utmost hesitation when faced with actions that do not fall precisely under Bivens, Davis, or Carlson." Bulger, 62 F.4th at 137.  See also Byrd v. Lamb, 990 F.3d 879, 882 (5th Cir. 2021) (per curiam); Oliva v. Nivar, 973

---

[5] We need not go so far as other circuits which have tried to establish guidelines, such as whether "[t]he severity, type, and treatment of [the plaintiff's] injuries differ significantly from those of the prisoner in Carlson" or if "non-lethal physical injuries . . . were eventually treated by the defendants." Johnson v. Terry, 119 F.4th 840, 859 (11th Cir. 2024).  See also Bulger v. Hurwitz, 62 F.4th 127, 138 (4th Cir. 2023) (holding that new context existed because "even if [the plaintiff] could make out a claim for an alleged failure to provide constitutionally adequate medical treatment, a lack of competent medical care did not cause [the plaintiff's] death"); Chambers v. Herrera, 78 F.4th 1100, 1106 (9th Cir. 2023) (holding that new context existed for failure-to-protect claim because "the mechanism of injury in [the plaintiff's] claim is different than in Carlson").

F.3d 438, 442 (5th Cir. 2020); Cantú v. Moody, 933 F.3d 414, 422 (5th Cir. 2019).[6]

Recognizing a judicially created cause of action based on Waltermeyer's allegations conflicts with the Court's directive that even claims presenting "almost parallel circumstances" may not suffice, Egbert, 596 U.S. at 595 (quoting Ziglar, 582 U.S. at 139), as well as Ziglar's directive that "the new-context inquiry is easily satisfied," Ziglar, 582 U.S. at 149.

Waltermeyer's counsel conceded at oral argument that the inquiry ends here:

> I think if you get to step two, we didn't want to waste defendants' time or this court's time by briefing step two. Because I think if you get to step two . . . I think any prison conditions claim fails. So I think what is left of Bivens is cases that are not a new context. . . a relatively narrow area around Carlson.

Oral Arg. Tr. at 10:44-11:17.[7]

---

[6] The cases that we cite do not all involve comparisons with Carlson as opposed to other key Bivens cases, but the Supreme Court has prescribed the same analysis regardless of the comparator case used. See., e.g., Egbert, 596 U.S. at 492-93.

[7] Under Egbert, we look to whether there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed,'" Egbert, 596 U.S. at 492 (quoting Ziglar, 582 U.S. at 136), including "sound reasons to think Congress might doubt the efficacy or necessity of a damages [claim]," id. (quoting Ziglar, 582 U.S. at 137). Waltermeyer did not brief this issue, and given his counsel's concession at oral argument, we need not discuss this step further.

- 16 -

We **affirm** the district court's dismissal of the appellant's claims.  No costs are awarded.

**-Dissenting Opinion Follows-**

**BREYER, <u>Associate Justice</u>, dissenting**. In three cases, the Supreme Court has held that a person who is injured by a violation of certain parts of the Constitution may recover damages. See <u>Bivens</u> v. <u>Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) (Fourth Amendment); <u>Davis</u> v. <u>Passman</u>, 442 U.S. 228 (1979) (Fifth Amendment); <u>Carlson</u> v. <u>Green</u>, 446 U.S. 14 (1980) (Eighth Amendment). The Court has since held that it would not "extend" those holdings to new contexts. See <u>Hernández</u> v. <u>Mesa</u>, 589 U.S. 93, 96 (2020). Here we must decide whether Broc Waltermeyer's complaint asserts a claim similar to one of the three <u>Bivens</u> cases -- in particular, <u>Carlson</u> -- or whether recognizing a cause of action here would "extend" <u>Carlson</u> to a new context. In my view, Waltermeyer's claim is similar to <u>Carlson</u>, and I dissent from the majority's contrary conclusion.

## I.

There are three critical <u>Bivens</u> cases. They begin in 1971 with <u>Bivens</u> itself. The plaintiff in that case claimed that federal officers had conducted an unlawful seizure, in violation of the Constitution's Fourth Amendment, and had thereby injured him. 403 U.S. at 389-90. The Court held that the Fourth Amendment provided him with a damages remedy. <u>Id.</u> at 397. As Justice Harlan succinctly put the matter: "[I]t is important, in a civilized society, that the judicial branch of the Nation's government stand

- 18 -

ready to afford a remedy" for certain constitutional violations. Id. at 411 (Harlan, J., concurring in judgment).

In 1979, the Court, in Davis, 442 U.S. 228, applied Bivens' reasoning in a new context. The plaintiff in that case claimed that a federal Congressman had dismissed her from her federal job in violation of the Constitution's Fifth Amendment. Id. at 230-31. The Court held that the Fifth Amendment provided her with a damages remedy. Id. at 234.

In 1980 the Court applied Bivens' reasoning in yet another context. The survivors of a man incarcerated in a federal prison claimed the prison's doctors had provided the prisoner with deficient medical care, leading to his suffering and to his death, in violation of the Eighth Amendment. Carlson, 446 U.S. at 16 & n.1. The Court held that the Eighth Amendment provided the survivors with a damages remedy. Id. at 19-20, 24.

The Court then "declined to extend" its Bivens' reasoning further. Hernández, 589 U.S. at 108; see Bush v. Lucas, 462 U.S. 367, 368 (1983) (no First Amendment damages remedy where federal employee claims First Amendment retaliation); Chappell v. Wallace, 462 U.S. 296, 297-98 (1983) (no constitutional damages remedy where enlisted military personnel claimed unconstitutional actions by superior officers during the plaintiffs' enlistment); Schweiker v. Chilicky, 487 U.S. 412, 414 (1988) (no constitutional damages remedy where plaintiffs claimed wrongful denial of Social

Security disability benefits).  The Court later said that the Bivens trio had not controlled any of these cases because the plaintiffs in each case were asking the Court to "authoriz[e] a new kind of federal litigation."  Wilkie v. Robbins, 551 U.S. 537, 550 (2007) (emphasis added) (quoting Bush, 462 U.S. at 378).  More recently, the Court has added that recognizing a new Bivens cause of action is "disfavored."  Ziglar v. Abbasi, 582 U.S. 120, 135 (2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  But it has added that its refusal to extend Bivens to new contexts is "not intended to cast doubt on the continued force, or even the necessity, of Bivens in the . . . context in which it arose."  Id. at 134.

In Ziglar the Court added a checklist of several factors that might help distinguish old contexts from new ones.  Some of the potentially relevant differences include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Id. at 140.

Let us first compare the present case with the relevant Bivens case, namely, Carlson:

|  | Carlson | Here |
|---|---|---|
| **Type of action** | Damages action | Same |
| **Constitutional violation** | Eighth Amendment | Same |
| **Status of plaintiff** | Federal prisoner | Same |
| **Status of key defendants** | Federal medical officers | Same |
| **Place of injury** | Federal prison facilities | Same |
| **Type of injury** | Aggravated asthma; pain and suffering; death | Chronic knee pain and related suffering |
| **Cause of injury** | Deliberate indifference to medical needs; administration of contra-indicated medical care; use of non-functioning medical devices | Deliberate indifference to medical needs |

Next, consider the remaining Ziglar factors, applied here and in Carlson.  In Carlson, the inmate sued a number of prison officials responsible for his medical treatment, including the Chief Medical Officer and Medical Training Assistant.  See Green v. Carlson, 581 F.2d 669, 671 (7th Cir. 1978).  The defendants in this case -- the prison warden and prison doctor -- are of no higher rank.  The "generality or specificity of the official action," Ziglar, 582

U.S. at 140, is identical across the two cases: Both inmates challenged specific decisions made by the defendants about the inmate's medical care.  In Carlson, the "extent of judicial guidance" available to federal officers was the principle set out in Estelle v. Gamble, 429 U.S. 97, 104 (1976), which established that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment.  See Carlson, 446 U.S. at 17 & n.3.  If anything, the defendants in this case had considerably more guidance than the defendants in Carlson, as the law in this area has developed considerably over the last forty-five years.  See, e.g., Farmer v. Brennan, 511 U.S. 825, 828-29 (1994) (clarifying Estelle's "deliberate indifference" standard). Both cases involve the same "statutory or legal mandate": the Eighth Amendment.  And the "risk of disruptive intrusion by the Judiciary into the functioning of the other branches" appears to be identical across the suits, as both involve the provisioning of medical care at federal prisons.

**B**

As far as I can tell, then, there are only two arguable differences between Carlson and the present case.  First, the injury.  The Carlson injury was more serious: The prisoner had asthma and died, see Carlson, 446 U.S. at 16 n.1, whereas here, the prisoner had significant knee-related pain and associated suffering.  Second, the treatment.  In Carlson the plaintiff

alleged contra-indicated, or perhaps no, treatment.  Id.  Here the prisoner concedes that he received some treatment, and that the treatment aligned with a recommendation from an external medical professional.

These are differences of degree, not kind.  The Seventh Circuit, upholding a Carlson-type claim in Brooks v. Richardson, 131 F.4th 613 (7th Cir. 2025), noted that differences in the "duration of the poor care or the gravity of the [medical] condition . . . seem more pertinent to the merits than to determining the scope of the holding in Carlson."  Id. at 615 (Easterbrook, J.).  The same reasoning applies here. Waltermeyer's claim appears to be weaker than the claim in Carlson.  Perhaps it is so much weaker that Waltermeyer has not even alleged an Eighth Amendment violation.  See Estelle, 429 U.S. at 104 (holding that a claim that prison medical care violates the Eighth Amendment requires that the defendants acted with "deliberate indifference to a prisoner's serious illness or injury").  If the defendants believe that to be the case, they should file a motion to dismiss or for summary judgment on that basis.  But the defendants have not yet made that argument. Before the district court, they argued only that Waltermeyer's claim is an impermissible extension of Bivens.  And so that is the only argument before us today.  To conclude that a claim extends Carlson because it is weaker than the claim in Carlson is to undermine Carlson itself -- the very

- 23 -

thing the Supreme Court has asked us not to do. See also Snowden v. Henning, 72 F.4th 237, 247 (7th Cir. 2023) (not a new Bivens context despite presence of warrant, fewer federal officers, and different location); Hicks v. Ferreyra, 64 F.4th 156, 166 (4th Cir. 2023) (not a new Bivens context even though home not searched, no arrest, no excessive force).

C

Cases in which the Supreme Court or this Circuit have refused to extend Bivens differ significantly from the present case. Ziglar involved non-citizens detained in an immigration detention center arguing that their conditions of confinement and their treatment by prison guards violated both their Fourth and Fifth Amendment rights. 582 U.S. at 128-29. The Court held that their Fourth Amendment claims, concerning high-level policies in an immigrant detention center, differed significantly from the more ordinary, lower-level search and seizure policies at issue in Bivens. Id. at 140. And Carlson did not control, because the Ziglar plaintiffs' claims were asserted under the Fourth and Fifth Amendments, whereas the claims in Carlson were asserted under the Eighth Amendment. Id. at 148.

Hernández involved a "cross-border shooting" with "national security" and "foreign relations" considerations, none of which were present in Bivens or here. 589 U.S. at 103, 107. Egbert v. Boule also involved an altercation along the border and

immigration police, not ordinary federal police officers. 596 U.S. 482, 489, 494, 498 (2022). Finally, Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001), and Minneci v. Pollard, 565 U.S. 118 (2012), involved suits against private corporations and private-prison operators, not (like Carlson and here) ordinary federal prison employees.

This Circuit's refusal-to-apply Bivens cases are yet more different. Quinones-Pimentel v. Cannon, 85 F.4th 63, 71 (1st Cir. 2023), involved a claim that federal officers had helped fabricate evidence in support of warrants to search a business (not an individual) for evidence of copyright and money-laundering violations. And Hornof v. United States, 107 F.4th 46 (1st Cir. 2024), involved a group of non-resident seaman suing the Coast Guard for unlawful detention aboard a foreign vessel.

Claims involving different constitutional amendments, high-level immigration-detention policies, foreign nations and foreign places of detention, and business or corporate parties, would seem, in my view, less like Carlson than this case, which is identical to Carlson but for less-serious injuries (knee-related suffering) or medical failures (deliberate indifference to medical needs). Thus, as I have said, while this might be a weaker case than Carlson, I cannot say that this case, when compared with Carlson, presents a "new kind of litigation" or "extends" Carlson to a new context.

For these reasons, with respect, I dissent.